No. 19,939.

SAM N. BEERY, COMMISSIONER OF INSURANCE, *v.* AMERICAN LIBERTY INSURANCE COMPANY, AN ALABAMA CORPORATION.

(375 P. [2d] 93)

Decided September 17, 1962.   Rehearing denied October 1, 1962.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK E. HICKEY, Deputy, Mr. ROBERT G. PIERCE, Assistant, for plaintiff in error.

Messrs. McCarthy & White, for defendant in error.

*En Banc.*

Mr. Justice McWilliams delivered the opinion of the Court.

The several parties involved in this litigation will hereinafter be referred to as follows: Samuel N. Beery, Commissioner of Insurance for the State of Colorado, as Commissioner; American Liberty Insurance Company, an Alabama corporation, as American; and Merchants Fire Insurance Company, a Colorado corporation, as Merchants.

In 1961 the Commissioner filed a claim against American, which in 1960 acquired all the assets and assumed all the liabilities of Merchants, alleging that Merchants had failed to pay premium taxes as provided by Chap. 87, Sec. 14, 1935 C.S.A. in a total amount of $11,356.66 covering the years 1951, 1952 and 1953.

American resisted this claim, denying that any premium tax was due and unpaid by Merchants for the years 1951, 1952 and 1953, and affirmatively alleging that from 1951 through 1953, and indeed even through 1960, the Commissioner issued annually a Certificate of Compliance and a Certificate of Authority to Merchants certifying that said company had complied with all requirements of the laws of the State of Colorado and that these certificates barred the Commissioner from collection of the tax.

Chap. 87, Sec. 14, 1935 C.S.A. (now C.R.S. '53, 72-1-14) provides, in part, as follows:

"All insurance companies doing business in this state shall pay . . . a tax of two per cent (2%) on the gross amount of all premiums collected or contracted for on policies or contracts of insurance covering property or risks within this state during the year ending December

31st next preceding, after deducting . . .; and, provided further, that if any company shall have fifty per cent (50%) or more of its assets invested in bonds or warrants of this state, or of any county, city, town or district of this state, and other property within this state in which said company is permitted by law to invest its funds, then such company shall not be required to pay the tax. . . ."

Although in our view the statute under consideration is clear and free from ambiguity, it is believed worthy of comment to briefly note that upon trial Kavanaugh testified that he was the Commissioner of Insurance from 1939 to 1954 and that from 1939 to 1951 his office apparently operated on the premise that bonds of the United States were not within the terms of the statute above quoted. He stated, however, that in 1951 this question was raised for the first time, and though conceding that "the statute takes in about everything, *except* United States Government Bonds" (our emphasis) he nonetheless decided that bonds of the United States should thereafter be included in determining whether an insurance company had 50% or more of its assets invested in the manner prescribed by the statute. His reasoning was that in his opinion "if any little town bonds were good with the insurance company to prevent its being taxed, certainly the United States Government bonds, which are the best security in the world, should be included."

The record further discloses that Mr. Kavanaugh ceased being Commissioner of Insurance in May 1954 and that Mr. Sam Beery succeeded him as Commissioner. Mr. Beery testified that from 1954 on he did not permit the Merchants to "include U. S. Government Bonds in calculating whether or not they were entitled to an exemption for paying the [premium] tax" for the reason that in his opinion such did "not comply with the provisions of the law."

Finally, it is of interest to note that in 1959 the Gen-

eral Assembly resolved this problem once and for all by enacting the following:

"In computing assets for the purpose of this section, the investments of any such company in the bonds, notes or other obligations of the United States of America, or any instrumentality of the United States, the obligations of which are guaranteed by the United States, shall be first deducted. . . ." C.R.S. '53, 72-1-14 (f) [Perm. Supp.]

At the trial it was stipulated by the Commissioner that if bonds of the United States are within the statute, then Merchants did not owe any premium tax for the years 1951 through 1953. Similarly, American, as the successor to Merchants, stipulated that if bonds of the United States are not to be included, and if the Commissioner is not otherwise barred or estopped from collecting said taxes then the sum of $11,356.66 is due and owing.

The trial court held that Kavanaugh's 1951 interpretation of Chap. 87, Sec. 14, 1935 C.S.A. was correct and that bonds of the United States were properly to be included in determining whether an insurance company had 50% of its assets invested in "Colorado property" as such is defined by the statute. Accordingly the tax claim of the Commissioner was dismissed, and by writ of error he seeks reversal of the judgment.

The main issue to be resolved is whether in determining if an insurance company has "fifty per cent (50%) or more of its assets invested in bonds or warrants of this state, or of any county, city, town or district of this state, and other property within this state in which such company is permitted by law to invest its funds," bonds of the United States are to be included or excluded.

American contends that reasonable men could differ in their interpretation of this statute and that Kavanaugh's interpretation being "reasonable" and "not capricious" should not be disturbed by the courts. How-

ever, the issue is not whether Kavanaugh acted "reasonably" but whether as a matter of law he was correct.

■ The obvious reason for Chap. 87, Sec. 14, 1935 C.S.A. was to encourage insurance companies to invest their assets in Colorado. To accomplish that end the General Assembly declared that an insurance company was totally exempt from paying the premium tax *if* 50% or more of its assets were invested "in bonds or warrants of this state, or of any county, city, town or district of this state and other property within the state." Bonds of the United States are not investments in Colorado property and are not within the terms of the statute. Clearly the *only* bonds to be included are bonds of the State of Colorado or any of its counties, cities, towns or districts. By enumerating the bonds which are included, the well-known doctrine of *expressio unius est exclusio alterious* excludes all *other* bonds. Therefore, all bonds except so-called "Colorado" bonds in effect having been specifically excluded by the statute, bonds of the United States (or of any of the other 49 states for that matter) are not "other property within this state." We conclude that Kavanaugh's interpretation of this statute was erroneous.

■ American alternatively contends that inasmuch as the Commissioner issued Merchants certain certificates for the years of 1951, 1952 and 1953 stating that Merchants had complied with all of the laws of Colorado relating to insurance that these certificates "should not be impeached in the absence of . . . fraud or mistake." We agree that the record does not disclose the slightest whisper of fraud. However, we definitely conclude that there was a mistaken or erroneous interpretation and application of a statute by the Commissioner. In support of the general proposition that the state is not bound by an erroneous interpretation of a taxing statute by one of its officers or agents, see 1 A.L.R. (2d) 344, et seq.

■ Similarly, in *Bennetts, Inc., v. Carpenter,* 111

504

Colo. 63, 137 P. (2d) 780 it was declared to be a general principle of law that the doctrine of estoppel cannot be invoked against any governmental agency acting in its public capacity, with the sage observation that "were it otherwise the state's servants could waive most of her revenue."

For the reasons assigned the judgment is reversed and the cause remanded with directions to the trial court to enter judgment for the Commissioner and against American in the amount of $11,356.66.