**COLORADO DEPARTMENT OF REVENUE; John J. Tipton, in His Official Capacity as the Executive Director of the Colorado Department of Revenue; and Amelie A. Buchanan, in Her Official Capacity as the Deputy Director of the Colorado Department of Revenue, Petitioners,**

v.

**WOODMEN OF THE WORLD and/or Assured Life Association, Respondents.**

No. 95SC15.

Supreme Court of Colorado, En Banc.

July 1, 1996.

Gale A. Norton, Attorney General, Stephen K. ErkenBrack, Chief Deputy Attorney General, Timothy M. Tymkovich, Solicitor General, Maurice G. Knaizer, Deputy Attorney General, Larry A. Williams, First Assistant Attorney General, Robert C. Ripple, Assistant Attorney General, Carolyn Lievers, Assistant Attorney General, General Legal Services Section, Denver, for Petitioners.

Holland & Hart, Alan Poe, Rachel A. Yates, Englewood, for Respondent.

Justice LOHR delivered the Opinion of the Court.

This case presents the issue of whether fraternal benefit societies are exempt from the payment of Colorado sales taxes on retail purchases of tangible personal property. The trial court upheld the claim of Woodmen of the World and/or Assured Life Association that it is exempt from such taxes. The Colorado Court of Appeals affirmed, with one judge dissenting. *Woodmen of the World v. Colorado Dep't of Revenue,* 893 P.2d 1349, 1354 (Colo.App.1994). We granted certiorari and now reverse the judgment of the court of appeals and return the case to that court with directions to reverse the judgment of the trial court and remand for further proceedings consistent with this opinion.

I.

In Colorado, sales taxes are imposed on all sales and purchases of tangible personal property at retail pursuant to the Emergen-

cy Retail Sales Tax Act of 1935, §§ 39–26–101 to –307, 16B C.R.S. (1994) ("sales tax act"). The sales tax act exempts certain sales from taxation based on the nature of the item sold or the characteristics of the purchaser. *See* § 39–26–114, 16B C.R.S. (1994).

Woodmen of the World and/or Assured Life Association ("Woodmen") is a fraternal benefit society organized in 1891 under the laws of Colorado. It provides death and disability insurance benefits to its members and their beneficiaries.

Based on inquiries from and information supplied by Woodmen, the Colorado Department of Revenue ("Department") informed Woodmen from time to time that it was exempt from the payment of sales taxes. This determination first appeared in a letter to Woodmen dated October 6, 1944, and was followed by a similar letter on June 2, 1978, and by certificates of exemption issued on August 29, 1979, and October 6, 1988.

In 1988 or 1989 the Department instituted a review of its policies for issuing certificates of exemption. Previously, it had issued such certificates whenever an organization could demonstrate that it was exempt from the payment of federal income taxes. Woodmen was exempt from federal income taxes as a fraternal benefit society under I.R.C. § 501(c)(8). As a consequence of its review, however, the Department determined that the sales tax act did not contain an exemption for sales to fraternal benefit societies. The Department also concluded that Woodmen did not satisfy the definition of a "charitable organization" in the sales tax act, and therefore was not entitled to the exemption in that act for sales to such organizations. Therefore, after auditing Woodmen's records the Department notified Woodmen by letter that effective February 23, 1990, it was "no longer entitled to make purchases that are exempt from Colorado sales tax."

As a result of the Department's notification, Woodmen began to pay sales taxes, but filed a refund claim for $2,133.06 on August 19, 1991. Woodmen claimed an exemption from the sales tax act on two grounds. First, it asserted that it is a "charitable organization" and therefore qualifies for exemption under a specific provision of the sales tax act. *See* § 39–26–102(2.5), 16B C.R.S. (1994) (defining charitable organization); § 39–26–114(1)(a)(II), 16B C.R.S. (1994) (providing an exemption for certain sales to charitable organizations). Second, it relied on a tax exemption provision in the fraternal benefit society statutes. *See* § 10–14–504, 4A C.R.S. (1994).[1] The Department denied Woodmen's refund claim, and Woodmen appealed the Department's final determination to the Douglas County District Court under a statute providing for de novo review. *See* § 39–21–105(2), 16B C.R.S. (1982). Both parties moved for summary judgment.

The district court determined that Woodmen is not a charitable organization within the meaning of section 39–26–102(2.5), 16B C.R.S. (1994), and that sales to Woodmen are not exempt from taxation under the charitable organization exemption provision outlined in section 39–26–114(1)(a)(II), 16B C.R.S. (1994). The court therefore granted the Department's motion for summary judgment on that issue. However, the court ruled that fraternal benefit societies are exempt from the payment of Colorado sales taxes pursuant to an exemption in the statutory provisions relating to fraternal benefit societies, and therefore granted Woodmen's cross-motion for summary judgment. *See* § 10–14–504, 4A C.R.S. (1994). The Department appealed, and the court of appeals affirmed over the dissent of one judge. *Woodmen,* 893 P.2d at 1354. We granted certiorari to review the court of appeals' decision,[2] and now reverse.

---

1. Section 10–14–504, 4A C.R.S. (1994), was formerly codified as section 10–14–133, 4A C.R.S. (1987).

2. We granted certiorari on the following questions:

   (1) Whether § 10–14–133, 4A C.R.S. (1987)—which was first enacted in 1911 and

has been amended and recodified as § 10–14–504, 4A C.R.S. (1994)—exempts fraternal benefit societies from payment of Colorado sales tax on their retail purchases of tangible personal property?

   (2) Should a prior interpretation of a statute by an agency that is not charged with administering the statute, which is in conflict with that

## II.

Colorado imposes taxes on the sales and purchases of tangible personal property at retail under the Emergency Retail Sales Tax Act of 1935, §§ 39–26–101 to –307, 16B C.R.S. (1994). That statute outlines exemptions from the taxation scheme, including sales made to "charitable organizations, in the conduct of their regular charitable functions and activities." § 39–26–114(1)(a)(II), 16B C.R.S. (1994). A "charitable organization" is defined in section 39–26–102(2.5), 16B C.R.S. (1994). The Department determined that Woodmen is not a charitable organization and denied Woodmen's claim of exemption. The district court agreed and granted the Department's motion for summary judgment to the extent that Woodmen's claim was based on the charitable organization exemption provision of the sales tax act. Woodmen did not appeal that determination. Thus, the applicability to Woodmen of the charitable exemption provision of the sales tax act is not at issue before us.

## III.

The district court and the court of appeals upheld Woodmen's claim of exemption under a provision of the statutes concerning the organization and governance of fraternal benefit societies. A fraternal benefit society is defined as follows:

Any incorporated society, order, or supreme lodge, without capital stock, conducted solely for the benefit of its members and their beneficiaries and not for profit, operated on a lodge system with ritualistic form of work, having a representative form of government, and which provides any of the benefits enumerated in section 10–14–401,[3] is hereby declared to be a fraternal benefit society.

§ 10–14–102, 4A C.R.S. (1994).[4] In a statute enacted in 1911, fraternal benefit societies were exempted from the payment of certain taxes:

Every fraternal benefit society organized or licensed under this Act is hereby declared to be a charitable and benevolent institution and all of its funds shall be exempt from all and every state, county, district, municipal and school tax, other than taxes on real estate and office equipment.

Ch. 139, sec. 30, 1911 Colo. Sess. Laws 422, 441 (currently codified as § 10–14–504, 4A C.R.S. (1994) (omitting "fraternal benefit" in view of a later-adopted definition of "society" and substituting "article" for "Act")).

■ However, Colorado did not impose retail sales taxes at the time section 10–14–504 was enacted. The sales tax was first adopted in this state by the Emergency Retail Sales Tax Act of 1935, §§ 39–26–101 to –307, 16B C.R.S. (1994). The issue before us, therefore, is whether the exemption from taxation granted to fraternal benefit societies in 1911 is applicable with respect to a tax that was neither in existence in 1911 nor adopted until 1935, twenty-four years after passage of the fraternal benefit society exemption provision.

■ Familiar rules of statutory construction guide our analysis. Our goal in construing statutes is to discern and give effect to the intent of the legislature. *E.g.*, *Jones v. Cox*, 828 P.2d 218, 221 (1992); *Woodsmall v. Regional Transp. Dist.*, 800 P.2d 63, 67 (Colo.1990). We look primarily to the language of a statute to determine legislative intent. *E.g.*, *Jones*, 828 P.2d at 221; *Woodsmall*, 800 P.2d at 67. When the statutory language is clear and unambiguous, there is no need to resort to interpretive rules. *E.g.*, *People v. Andrews*, 871 P.2d 1199, 1201 (Colo.1994); *Woodsmall*, 800 P.2d at 67. In contrast, we may consider legislative history to assist in ascer-

---

agency's current interpretation of the statute, be accorded significant weight and deference by a court determining the legislative intent of the statute?

3. Such benefits include death benefits, endowment benefits, annuity benefits, temporary or permanent disability benefits, hospital, medical or nursing benefits, and other benefits that are authorized for life insurers and consistent with the article governing fraternal benefit societies. § 10–14–101, 4A C.R.S. (1994).

4. For convenience, we refer to the current codification of the fraternal benefit society statutes throughout this opinion, unless otherwise indicated.

taining the meaning of a statute if the statutory language is ambiguous. *E.g., General Elec. Co. v. Niemet,* 866 P.2d 1361, 1364 (1994); *Griffin v. S.W. Devanney & Co., Inc.,* 775 P.2d 555, 559 (Colo.1989). In determining the meaning of a statute, we must adopt a construction that will serve the legislative purposes underlying the enactment. *E.g., Griffin,* 775 P.2d at 559; *Howard Elec. v. Department of Revenue,* 771 P.2d 475, 479 (Colo.1989). Finally, in construing tax statutes there is a strong presumption that taxation is the rule and exemption the rare exception. *E.g., Howard,* 771 P.2d at 480; *Security Life & Accident Co. v. Heckers,* 177 Colo. 455, 458, 495 P.2d 225, 226 (1972). The burden is on the taxpayer who claims an exemption to establish clearly the right to such an exemption. *E.g., Security Life,* 177 Colo. at 458, 495 P.2d at 226. With these principles in mind, we turn to the task of construing the relevant statutes.

### A.

Colorado had no sales tax in 1911, when fraternal benefit societies were declared to be "charitable and benevolent institution[s]" and were exempted from all taxes "other than taxes on real estate and office equipment." § 10–14–504, 4A C.R.S. (1994). Sales taxes therefore were not specifically contemplated by the legislature when the exemption was crafted. In 1935, when the sales tax act was first adopted, the legislature imposed the tax on "all sales and purchases of tangible personal property at retail." § 39–26–104, 16B C.R.S. (1994). However, the statute included a detailed list of exemptions from taxation. *See* § 39–26–114, 16B C.R.S. (1994). Fraternal benefit societies were not designated among the organizations exempt from the payment of sales taxes. *Id.* Among the exemptions, however, is one for "[a]ll sales made to charitable organizations, in the conduct of their regular charitable functions and activities." § 39–26–114(1)(a)(II), 16B C.R.S. (1994). A charitable organization is defined in detail to encompass only organizations "organized and operated exclusively" for charitable and other specified purposes. § 39–26–102(2.5), 16B C.R.S.

(1994). Although fraternal benefit societies may engage in some charitable activities, they are not organized and operated exclusively for those purposes, but instead are formed to provide various insurance benefits for their members and the beneficiaries of the members. *See generally* §§ 10–14–401 to –405, 4A C.R.S. (1994). Thus, at the time the legislature considered the types of organizations that would qualify for exemption from sales taxes, it neither specifically listed fraternal benefit societies nor included them within the definition of exempt charitable organizations. This is a strong indication that the legislature did not intend to extend a sales tax exemption to fraternal benefit societies, even though such organizations had been legislatively characterized as "charitable and benevolent institutions" under the 1911 fraternal benefit society statute. *See City & County of Denver v. Rinker,* 148 Colo. 441, 446, 366 P.2d 548, 550 (1961) ("[T]here is a presumption that all laws are passed with knowledge of those already existing.").

### B.

We considered an analogous issue in *Security Life & Accident Co. v. Heckers,* 177 Colo. 455, 495 P.2d 225 (1972). In that case, certain insurance companies filed claims for refunds of Colorado sales and use taxes. The Director of Revenue denied the claims, the district court affirmed, and we affirmed on review. The insurance companies relied on a provision in a 1907 statute imposing a tax on insurance premiums collected and providing, among other things, that such taxes "shall constitute all taxes collectible under the laws of this state against any such insurance companies," with exceptions for taxes upon real and personal property. *Id.* at 457, 495 P.2d at 226 (quoting § 72–1–14(1)(c), C.R.S. (1963)). We relied on several factors in denying the insurance companies' claims. We began with the "basic proposition that taxation is the rule and exemption therefrom the exception" and noted that "[t]he burden is on the taxpayer who claims an exemption to clearly establish the right to such exemption." *Id.* at 458, 495 P.2d at 226–27. As

relevant to the present case,[5] we relied on the rationale that (1) at the time the sales tax act was passed the legislature was aware of the 1907 tax exemption statute for insurance companies "and in spite of that knowledge, sales and use taxes were imposed on *all* sales and purchases of property at retail," and (2) insurance companies did not "fall within the classifications of the entities exempted" by the provisions of the sales tax act. *Id.* at 459, 495 P.2d at 227–28 (emphasis in original). We also relied upon an exemption for insurance companies contained in the 1937 income tax act and stated that "[t]he obvious reason for the legislature to specifically exempt insurance companies from the income tax was that it did not consider them to be exempt under the general terms of [the 1907 tax exemption statute for insurance companies]." *Id.* at 461, 495 P.2d at 228.[6] We then concluded that the 1907 tax exemption statute "was intended to exempt insurance companies from taxes which were specifically mentioned and those which were in general use at the time." *Id.* at 461, 495 P.2d at 228.

As support, we cited the leading case of *Connecticut Light & Power Co. v. Walsh*, 134 Conn. 295, 57 A.2d 128, 134 (1948), in which the Connecticut Supreme Court held that a 1913 statute imposing a gross earnings tax on utility companies in lieu of all other taxation did not exempt such companies from a later-enacted sales and use tax. We quoted from the Connecticut decision with approval:

> Sales and use taxes, if any existed in 1913 and 1915, were certainly not generally known, and it cannot be assumed that the legislature, in providing that the gross earnings taxes imposed in those years should be in lieu of all taxation of that

nature which might at some future day be imposed by it, meant to include them. The use tax is in its nature entirely foreign to those which the general assembly had in mind when the act of 1913 was adopted.

*Id.* at 461–62, 495 P.2d at 228–29 (quoting *Connecticut Light*, 57 A.2d at 134). We concluded our analysis in *Security Life* as follows:

> From the foregoing it seems clear to us that in 1907 when the general assembly was enacting a law to regulate insurance companies and imposing a tax to finance that regulation and not for the purpose of raising money for general governmental purposes, it did not intend to exempt insurance companies from all future taxes needed to meet the general requirements of government, especially where the type of tax was unknown to them. It is also clearly apparent that in enacting the sales and use tax law, it was not the legislative intent to include insurance companies within the governmental or religious and charitable categories exempted in that law.
>
> If the legislature had intended to exempt insurance companies from the sales and use taxes in 1965 [when it subjected them to a special premium tax under another act], it would have been a simple matter for it to have amended the appropriate sections of the Sales and Use Tax Act. Not having elected to do so, we cannot by construction do so.

*Id.* at 462, 495 P.2d at 229.

The Colorado Court of Appeals relied on *Security Life* in deciding a case closely analogous to the one before us today. *See Southwest Catholic Credit Union v. Charnes*, 665

---

**5.** Other arguments also supported our decision in *Security Life & Accident Co. v. Heckers*, 177 Colo. 455, 495 P.2d 225 (1972). A salient element of our rationale was that taxation was consistent with formal rules and regulations adopted by the Department, pursuant to which the insurance companies had paid sales and use taxes for years without objection. *Id.* at 458, 495 P.2d at 227. Woodmen contends that *Security Life* is distinguishable from the present case on the basis of that and other alleged differences. We address and reject these arguments later in this opinion and conclude that *Security Life* remains persuasive precedent for the result we reach today. *See infra* part IV.

**6.** The same logic applies to fraternal benefit societies, which have been explicitly exempted from the income tax at times, *see, e.g.*, § 138–1–8(2), 7 C.R.S. (1963), but have never been exempted from the sales tax act. The current income tax statutes in Colorado exempt generally those individuals or organizations that are exempt from federal income taxation under the provisions of the Internal Revenue Code. § 39–22–112, 16B C.R.S. (1994). Fraternal benefit societies are exempt from taxation under section 501(c)(8) of the Internal Revenue Code.

P.2d 626, 627 (Colo.App.1982). In *Southwest Catholic Credit Union v. Charnes,* a credit union claimed a refund for sales taxes imposed on the purchase of tangible personal property at retail. It relied on section 11–30–123, which provided that a credit union *"shall not be subject to taxation except as to real estate owned."* *Id.* at 626 (quoting with emphasis § 11–30–123, C.R.S. (1973)). The court of appeals noted that the sales tax act (1) was enacted after section 11–30–123, (2) provided for a tax "[o]n the purchase price paid or charged upon *all* sales and purchases of tangible personal property at retail," and (3) listed numerous exemptions but provided none for credit unions. *Id.* (quoting with emphasis § 39–26–114, 16B C.R.S. (1982)). The court observed that in *Security Life,* we held that the legislature presumably was aware of the earlier-enacted insurance company exemption when it adopted the sales tax act and imposed sales taxes on *all* retail purchases but did not include a specific exemption for insurance companies. *Id.* at 627 (citing *Security Life,* 177 Colo. at 455, 495 P.2d at 225). The absence of an exemption provision indicated a legislative intent to subject insurance companies to the sales tax act. *Id.* The court of appeals adopted the rationale of *Security Life* in reversing a district court judgment that upheld a credit union's claim of exemption from sales taxes. In doing so, the court of appeals noted that its decision comported with the strong presumption that taxation is the rule and exemption the rare exception. *Id.*

As the court of appeals related in *Southwest Catholic,* other states have reached the same conclusion under similar statutes. *Id.* We cited *Connecticut Light,* 57 A.2d at 134, as the leading case in our decision in *Security Life,* 177 Colo. at 461–62, 495 P.2d at 228–29. Many other cases support our conclusion that the fraternal benefit association exemption claimed by Woodmen is inapplicable to the later-enacted sales tax act. *See, e.g., Young Men's Christian Ass'n of Birmingham v. State,* 265 Ala. 640, 93 So.2d 781, 785 (1957) (1919 statute exempting property of certain corporations from taxation was not intended to apply to later-adopted sales and use tax "unknown in Alabama law" in 1919); *Oxford v. Housing Auth. of City of Barnesville,* 104 Ga.App. 797, 123 S.E.2d 175, 177 (1961) ("We cannot say that the legislature, in 1937 when it enacted [a statute exempting housing authorities from taxation] intended to exempt the Housing Authority from the provisions of the sales and use tax, which was not enacted until 1951."); *Central Credit Union v. Comptroller of Treasury,* 243 Md. 175, 220 A.2d 568, 573 (1966) (tax exemption for credit unions, found in 1943 statute, did not exempt such organizations from sales tax statute enacted four years later); *Supreme Council of Royal Arcanum v. State Tax Comm'n,* 358 Mass. 111, 260 N.E.2d 822, 824 (1970) (statutory exemption of funds of fraternal benefit societies from all taxes other than those on real estate and office equipment under statute identical to section 10–14–504 did not apply to exempt such societies from later-enacted sales and use taxes, which contained specific exemptions for certain types of nonprofit organizations but none for fraternal benefit societies); *Bob–Lo Co. v. Michigan Dept. of Treasury,* 112 Mich.App. 231, 315 N.W.2d 902, 905 (1982) (court notes that "[o]ther jurisdictions confronted with broadly worded exemptions in old statutes have refused to apply the exemption to new or different forms of taxation enacted a number of years later," and concludes that a general statutory exemption from taxation does not apply to later-enacted use tax act); *Farm & Home Savings Ass'n v. Spradling,* 538 S.W.2d 313, 317–19 (Mo.1976) (statute imposing certain taxes on savings and loan associations "in lieu of all other taxes of whatsoever nature" did not exempt associations from later-enacted sales and use tax, which contained no exemptions for such associations); *Celina Mutual Ins. Co. v. Bowers,* 5 Ohio St.2d 12, 213 N.E.2d 175, 178 (1965) (statute exempting insurance companies from "all other taxes" was not intended to provide exemption from later-enacted sales and use tax). Although many of the foregoing cases rely on alternative or additional rationales,[7]

---

7. Some of the courts have reasoned that sales taxes are imposed on *transactions* and are not prohibited by statutes exempting, *e.g., property* of certain organizations from taxation. *Young Men's Christian Ass'n of Birmingham v. State,* 265 Ala. 640, 93 So.2d 781, 782–84 (1957); *Cen-*

as did *Security Life,* 177 Colo. at 458–61, 495 P.2d at 227–28, courts in other jurisdictions consistently find persuasive that a generally worded exemption will not exempt organizations from a later-enacted sales and use tax, especially where the later-enacted tax statute contains specific exemptions which do not apply to the organization in question.[8]

## IV.

Woodmen, however, advances several arguments in support of a conclusion contrary to the one that we adopt today. It argues for an exemption based on the language and legislative history of section 10–14–504. Woodmen distinguishes *Security Life* and attempts to persuade us that those distinctions dictate a conclusion that Woodmen is entitled to its claimed exemption. In particular, Woodmen emphasizes that the conclusion in *Security Life* that insurance companies are not exempt from sales taxes was consistent with administrative interpretation of the stat-

ute, whereas the Department recognized an exemption for Woodmen long before changing its position in 1990. Woodmen also relies on a general exemption in the sales tax act, *see* § 39–26–114(1)(a)(III), 16B C.R.S. (1994), and on the principle of statutory construction that a specific statute prevails over a general one when the two statutes conflict. We address these arguments in turn.

## A.

Woodmen relies first on the argument that section 10–14–504 clearly and unambiguously exempts fraternal benefit societies from all state taxes. Woodmen emphasizes the language that every fraternal benefit society is declared to be "a charitable and benevolent institution" and that all of its funds shall be exempt from all state taxes except taxes on real estate and office equipment. *See* § 10–14–504, 4A C.R.S. (1994). However, in the subsequent enactment of the sales tax act the General Assembly specifically considered the

---

*tral Credit Union v. Comptroller of Treasury,* 243 Md. 175, 220 A.2d 568, 571–72 (1966); *Bob–Lo Co. v. Michigan Dept. of Treasury,* 112 Mich.App. 231, 315 N.W.2d 902, 904–05 (1982); *Farm & Home Savings Ass'n v. Spradling,* 538 S.W.2d 313, 317 (Mo.1976); *Celina Mutual Ins. Co. v. Bowers,* 5 Ohio St.2d 12, 213 N.E.2d 175, 178 (1965). The Colorado sales tax is imposed on *sales and purchases* whereas the fraternal benefit society exemption in section 10–14–504, 4A C.R.S. (1994), exempts "funds" of such societies from taxation. However, Woodmen does not rely on this distinction, and we do not pursue it.

**8.** These courts were not convinced by exemption provisions that included all-encompassing language similar to the exemption from "all and every state, county, district, municipal, and school tax other than taxes on real estate and office equipment" found in § 10–14–504, 4A C.R.S. (1994). For example, in *Supreme Council of the Royal Arcanum v. State Tax Commission,* the Supreme Judicial Court of Massachusetts held that fraternal benefit societies were not exempt from the 1966 sales and use tax based on a 1958 exemption for fraternal benefit societies from "'all and every state, county, district, municipal and school tax other than taxes on real estate and office equipment.'" 358 Mass. 111, 260 N.E.2d 822, 823 n. 1 (1970) (quoting St.1958, c. 540, § 1) (emphasis added). Similarly, in *Young Men's Christian Association of Birmingham v. State,* the Supreme Court of Alabama refused to exempt the YMCA from a sales tax first enacted in 1940 and subsequently amended, based on a provision, originally enacted in 1919,

that exempted the YMCA from "'any and all state, county, and municipal taxes, licenses, fees and charges of any nature whatsoever.'" 265 Ala. 640, 93 So.2d 781, 784 (quoting Title 51, Code 1940, § 12) (emphasis added). *See also Connecticut Light & Power Co. v. Walsh,* 134 Conn. 295, 57 A.2d 128, 130 (1948) (relevant provision imposed gross earnings taxes on telephone companies "in lieu of all" other taxes); *Oxford v. Housing Auth. of City of Barnesville,* 104 Ga.App. 797, 123 S.E.2d 175, 176 (1961) (relevant provision exempts housing authority from "all taxes and special assessments of the city, the county, the State or any political subdivision thereof"); *Central Credit Union v. Comptroller of Treasury,* 243 Md. 175, 220 A.2d 568, 571 (1966) (relevant provision exempts credit unions from "all taxation now or hereafter imposed by the State, or any county or municipality"); *Bob–Lo Co. v. Michigan Dept. of Treasury,* 112 Mich.App. 231, 315 N.W.2d 902, 904 (1982) (relevant provision imposes a tonnage tax "in lieu of all taxes" and exempts watercraft from "all further taxation, either state, county or municipal"); *Farm & Home Savings Ass'n v. Spradling,* 538 S.W.2d 313, 315 (Mo.1976) (relevant provision imposed "exclusive" tax on mutual savings and loan associations "in lieu of all other taxes of whatsoever nature"); *Celina Mutual Ins. Co. v. Bowers,* 5 Ohio St.2d 12, 213 N.E.2d 175, 177 (1965) (relevant provision imposed a tax on real estate of domestic insurance companies "in lieu of all other taxes on the other property and assets of such domestic insurance company and of all other taxes, charges, and excises on such domestic insurance companies.").

requirements for exemption of organizations from taxation on the basis of charitable character. *See supra* part II. The legislature chose to adopt the specific definition of a "charitable organization" found in section 39–26–102(2.5), 16B C.R.S. (1994). Section 39–26–102(2.5) requires an entity to be organized and operated *exclusively* for charitable or other specified purposes in order to qualify. *Id.* This is a strong indication that the legislature did not contemplate an exemption based on charitable character for entities such as Woodmen whose organization and operation is not so limited.

■ Woodmen also relies on a 1993 amendment to section 10–14–504, which specified that the exemption applies to *all and every* state tax, not simply *all* state taxes. Ch. 167, sec. 1, § 10–14–504, 1993 Colo. Sess. Laws 585, 603. Woodmen contends that this indicates a strengthening and reaffirmation of the broad scope of the exemption for fraternal benefit societies. Neither the statutory language nor the legislative history supports this argument.

First, section 10–14–504 as originally enacted in the 1911 session laws *contained* the language "all and every." Ch. 139, sec. 30, 1911 Colo. Sess. Laws 422, 441. The omission of the words "and every" first occurred in the 1973 revised statutes. § 10–14–133, 4 C.R.S. (1973). The revisor of statutes, under the supervision and direction of the committee on legal services, was given the authority to "compile, edit, arrange, and prepare for publication all laws of the state of Colorado of a general and permanent nature." § 2–5–101, 1B C.R.S. (1980). In performing this function, the legislature directed the revisor to "[e]liminate all obsolete and redundant wording of laws." § 2–5–103(1)(b), 1B C.R.S. (1980). Presumably this was the basis upon which the term "and every" was dropped from the statute. "All" is a term as comprehensive as "all and every." "Every" is one of the formal definitions of "all." *Grand Junction v. Ute Water Conservancy*, 900 P.2d 81, 91–92 (Colo.1995) (citing *Black's Law Dictionary* 74 (6th ed. 1990)); Webster's Ninth New Collegiate Dictionary 70–71 (1989). In-deed, "'all' is an unambiguous term and means the whole of, the whole number or sum of, or every member or individual component of, and is synonymous with 'every' and 'each.'" *Hudgeons v. Tenneco Oil Co.*, 796 P.2d 21, 23 (Colo.App.1990); *accord Grand Junction*, 900 P.2d at 91–92; *O'Brien v. Village Land Co.*, 780 P.2d 1, 2 (Colo.App. 1988), *rev'd on other grounds*, 794 P.2d 246, 252–53 (Colo.1990). Thus, the phrase "and every" added nothing to the scope of the exemption and presumably was deleted by the revisor as redundant prior to publication of the 1973 revised statutes.

The legislative history of the 1993 amendment is devoid of any indication that the General Assembly intended, by reintroducing the phrase "and every" into section 10–14–504, to strengthen the exemption for fraternal benefit societies or to respond to the Department's decision to deny Woodmen an exemption from the sales tax act. Section 10–14–504 was amended in 1993 as part of an extensive general revision of the statutes governing fraternal benefit societies. The legislature revised the statutes governing fraternal benefit societies to bring those provisions "up to date with current insurance laws." Second House Reading of S.B. 93–72, 59th Gen. Assembly, 1st Reg. Sess., March 19, 1993, Audio Tape No. 93–19 (comments of Representative Michelle Lawrence). Woodmen's own counsel appeared before the Senate Business Affairs Committee on January 20, 1993, and testified that the intent of the amendments was to conform the fraternal benefit society statutes to the statutory language in "neighboring states," and that "the advantage of this type of legislation obviously is that societies that are licensed in other states have the same rules and regulations that they are abiding by." Hearings on S.B. 93–72, Senate Business Affairs Committee, 59th Gen. Assembly, 1st Reg. Sess., Jan. 20, 1993, Audio Tape No. 93–1. Many of the fraternal benefit society tax exemption statutes of the neighboring states referenced in the Senate hearing do contain the "all and every" language now found in amended section 10–14–504, 4A C.R.S. (1994).[9] The

---

9. *See* Neb.Rev.Stat. § 44–1095 (1993); N.M. Stat. Ann. § 59A–44–24 (Michie 1995); N.D. Cent.Code § 26.1–15.1–24 (1995); Okla. Stat. Ann. tit. 36, § 2724.1 (West 1996 Supp.); S.D.

phrase "all and every" appears as well in section 24 of the Model Fraternal Code for Organization and Supervision of Fraternal Benefit Societies (National Fraternal Congress of America 1983), which is essentially identical to section 10–14–504, 4A C.R.S. (1984). When the bill containing the amendments to the fraternal benefit society statutes, including the section 10–14–504 amendment, reached the Senate floor on January 29, 1993, Senator Tebedo, the Senate sponsor of the bill, explained that the bill "brings in the model code that has been adopted by the National Congress of Fraternal Societies." Second Senate Reading of S.B. 93–72, 59th Gen. Assembly, 1st Reg. Sess., Jan. 29, 1993, Audio Tape No. 93–4. Informed in part by the legislative history, we conclude that the amendment to section 10–14–504 was nothing more than an attempt to bring Colorado's statutory language into closer alignment with the essentially uniform statutory language employed by nearby states and appearing in the model act.[10]

## B.

Woodmen seeks to avoid the force of *Security Life* by emphasizing the differences between the facts and rationale of that case and the case now before us. Woodmen notes the differences in the nature of the exemption at issue in the two cases, and the fact that administrative interpretation as reflected in formal rules and regulations of the Department was consistent with imposition of the tax in *Security Life* whereas the taxing authorities indicated to Woodmen that it was exempt from the payment of sales taxes on retail purchases for a long period of time. These differences cannot obscure the fact that several of the principal arguments upon which we relied in *Security Life* are equally applicable to the present case: (1) sales taxes were not in contemplation when the general tax exemption for fraternal benefit societies was adopted, (2) the sales tax act imposes taxes on *all* sales and purchases of tangible

personal property at retail, and (3) the sales tax act lists no specific exemption for fraternal benefit societies notwithstanding a detailed list of other exemptions, including an exemption for "charitable organizations." *See Security Life,* 177 Colo. at 458–62, 495 P.2d at 227–29.

### 1.

The tax on insurance premiums imposed by the 1907 statute at issue in *Security Life* specifically "'constitute[d] all taxes collectible under the laws of this state'" and was to be used to pay all expenses of the insurance department. 177 Colo. at 457, 495 P.2d at 226 (quoting § 72–1–14, C.R.S. (1965)). From this, Woodmen constructs the argument that "the legislature's *quid pro quo* for the imposition of this premium tax was an exemption from only taxes then in existence, not an exemption from all future taxes of a different nature as well." In contrast, Woodmen asserts, the tax exemption in section 10–14–504 for fraternal benefit societies is based on their character as "charitable and benevolent institution[s]." *See* § 10–14–504, 4A C.R.S. (1994). Woodmen notes the following language beginning the summary of our holding in *Security Life:*

> From the foregoing it seems clear to us that in 1907 when the general assembly was enacting a law to regulate insurance companies and imposing a tax to finance that regulation and not for the purpose of raising money for general governmental purposes, it did not intend to exempt insurance companies from all future taxes needed to meet the general requirements of government....

*Id.* at 462, 495 P.2d at 229. We immediately went on to note, however, that this was true "especially where the type of tax was unknown to [the general assembly]." *Id.* at 462, 495 P.2d at 229. We continued by emphasizing that insurance companies were not included "within the governmental or reli-

Codified Laws Ann. § 58–37A–24 (1990); Wyo. Stat. § 26–29–224 (1977).

**10.** Also included in the 1993 amendments to section 10–14–504 was a change from "fraternal benefit society" to "society" to reflect that "soci-

ety" was so defined as part of those amendments, and a change from "school taxes" to "school tax," the term appearing in the model act and used when the statute was originally adopted in 1911.

gious and charitable categories exempted in that law," that it would have been simple for the legislature to have included such an exemption had it wished to do so, and that absent such legislative action we could not supply such an exemption by construction. *Id.* at 462, 495 P.2d at 229. Thus, our rationale in *Security Life* contained several strands of argument, including: (1) that the sales tax was unknown when the general exemption for fraternal benefit societies was adopted, (2) that insurance companies were not included within specific categories of exemption in the sales tax act, and (3) that it was not the legislative intent to exempt insurance companies from the sales tax act, as reflected by the ease with which such language of exemption could have been included. *Id.* at 462, 495 P.2d at 229. These latter arguments apply as well to Woodmen's claim of exemption in the present case and persuade us it is not well founded.

2.

■ Woodmen also contends that the Department's history of recognizing a sales tax exemption for Woodmen should weigh heavily in our construction of the relevant statutes, relying on the Department's letters of October 6, 1944, and June 2, 1978, and its certificates of exemption dated August 29, 1979, and October 6, 1988. Woodmen contends that this position is supported by *Security Life*, wherein we relied in part on a formal Department rule and regulation construing the statutes to *impose* sales taxes on insurance companies, and long-term taxpayer acquiescence in that construction, to support the imposition of the tax. *See* 177 Colo. at 458, 495 P.2d at 227. We do not agree that the Department's history of considering Woodmen exempt from the sales tax act is a

weighty consideration under the circumstances of this case.

■ We agree with Woodmen that the construction of statutes by agencies charged with their enforcement generally should be given deference by a reviewing court.[11] *E.g., Hewlett–Packard Co. v. Department of Revenue,* 749 P.2d 400, 406 (Colo.1988). Both the October 6, 1944, letter, and the similar exemption letter dated June 2, 1978, however, are conclusory documents that are not based on any Department rule or regulation and contain no explanation of the basis for the exemption other than reference to a reliance on letters and documentation supplied by Woodmen.[12] Thus, it is not apparent from the record whether the Department relied on the exemption for charitable organizations in the sales tax act, on the tax exemption for fraternal benefit societies in section 10–14–504, or on some other rationale. The certificates of exemption that the Department issued to Woodmen on August 29, 1979, and October 6, 1988, are even more conclusory in that they make no reference to the materials or representations on which they are based and do not specify the statutory basis for the exemption. This background contrasts with that in *Security Life*, in which imposition of the sales tax was predicated on a formally promulgated Department rule and regulation. 177 Colo. at 458, 495 P.2d at 227.

In addition, in its opposition brief regarding Woodmen's summary judgment motion, the Department included an affidavit from an employee familiar with the Woodmen account indicating that (1) until instituting an audit of exempt organizations in 1988 or 1989, the procedure for issuing exemptions was "lax," and (2) since 1979, certificates of exemption, provided to Woodmen in 1979 and 1988, were "issued by a clerical person without in-depth analysis."[13] We accord little weight to the

---

11. The Department argues that because it is not charged with administration of fraternal benefit society statutes, its prior interpretation of § 10–14–504, 4A C.R.S. (1994), recognizing a sales tax exemption for Woodmen, should not be accorded significant weight. As explained in the text, however, we cannot determine the basis upon which the Department relied in its letters and certificates of exemption issued to Woodmen. Therefore, we place no reliance on this facet of the Department's argument in arriving at our decision in this case.

12. Woodmen's letters and documentation in support of its 1944 and 1978 exemption requests are not part of the record before us.

13. This statement was an undisputed material fact which this court must respect on review. *See, e.g., Jafay v. Board of County Comm'rs,* 848 P.2d 892, 900 (Colo.1993); *Churchey v. Adolph Coors Co.,* 759 P.2d 1336, 1340 (Colo.1988).

Department's letters and certificates of exemption in view of the Department's admittedly cursory and conclusory process in issuing exemptions based solely on unspecified documentation supplied by the applicant for an exemption. We conclude, therefore, that the court ·of appeals erred in according the Department's earlier determinations "significant weight." *Woodmen,* 893 P.2d at 1352.

■■■ The Department's current interpretation of Woodmen's status, in contrast, is entitled to comparatively more weight. Unlike the Department's 1944, 1978, 1979, and 1988 determinations, which contained no substantive explanation for the Department's decisions, the Department's letter to Woodmen of February 23, 1990, revoking Woodmen's sales tax exemption was explicit in explaining the agency's actions as based on the fact that Woodmen "does not satisfy the 'charitable' requirements under C.R.S. [§] 39–26–102(2.5)." The Department stated:

An organization may be deemed "charitable" by one statutory provision, but this designation is not transferable to another statutory provision. Before any organization is to be exempt from paying Colorado sales tax, it must satisfy in full the definition of a "charitable organization" under C.R.S. [§] 39–26–102(2.5).

The wording of said statute follows that of the Internal Revenue Code 501(c)(3). While the Department of Revenue is not bound by federal regulations or code, it does consider a non-profit organization to be not charitable if it is exempt under any other federal code. Woodman [sic] of the World is exempt as a fraternal benefit society under I.R.S.Code 501(c)(8).

Furthermore, the Deputy Director of the Department affirmed the Department's most recent decision in a formal final determination. An agency interpretation that is not only in conformity with the relevant statutory provisions but is reasonably supported by the agency's reasoning and the record is entitled to deference. *See generally, e.g., Howard,* 771 P.2d at 478–79; *Colorado Div. of Employment v. Parkview Hosp.,* 725 P.2d 787, 790–91 (Colo.1986); *City & County of Denver v. Industrial Comm'n,* 690 P.2d 199, 203 (Colo.1984). This is true even where the agency decision conflicts with earlier agency interpretations. *See Union Pac. R.R. Co. v. Heckers,* 181 Colo. 374, 382–83, 509 P.2d 1255, 1259–60 (1973); *Beery v. American Liberty Ins. Co.,* 150 Colo. 499, 503, 375 P.2d 93, 96 (1962); *Bennetts, Inc. v. Carpenter,* 111 Colo. 63, 68, 137 P.2d 780, 781–82 (1943). To hold otherwise would preclude agencies from correcting mistakes and would perpetuate a thwarting of the legislature's will.

■■■ We recognize, as previously noted, that the construction of statutes by administrative officials charged with their enforcement should generally be given deference by a reviewing court. *Hewlett–Packard,* 749 P.2d at 406. And we agree that subsequent agency interpretations that contradict previous agency action may be entitled to less weight than contemporaneous and thereafter consistent agency interpretations. *See Adams v. Colorado Dept. of Social Serv.,* 824 P.2d 83, 88 (Colo.App.1991). However, the Department has adopted contradictory positions with respect to Woodmen's claim of exempt status, and "when the construction of a statute by those charged with its administration has not been uniform, we need not extend such deference [to the agency's statutory construction]." *Three Bells Ranch v. Cache La Poudre,* 758 P.2d 164, 172 (Colo.1988); *accord, e.g., Colo. Common Cause v. Meyer,* 758 P.2d 153, 159 (Colo.1988). Because we find the Department's current position that Woodmen is not exempt from the sales tax act to be well supported by statutory language and by precedent, we do not defer to the Department's earlier decisions that Woodmen was exempt from the sales tax act. *See Three Bells,* 758 P.2d at 172 (court need not defer to administrative interpretation when statutory framework is clear).

C.

Woodmen's remaining arguments relate to a general exemption in the sales tax act and the principle of statutory construction that a specific statute prevails over a general one when the two statutes conflict. These arguments need not detain us long.

### 1.

■ The sales tax act contains a general exemption for "[a]ll sales which the state of Colorado is prohibited from taxing under the constitution or laws of the United States or the State of Colorado." § 39–26–114(1)(a)(III), 16B C.R.S. (1994). Woodmen argues that fraternal benefit societies are exempt from sales taxes under section 10–14–504, 4A C.R.S. (1994), and that this exemption is incorporated into the sales tax act by the reference to "sales which the state of Colorado is prohibited from taxing under the ... laws of ... the state of Colorado," § 39–26–114(1)(a)(III), 16B C.R.S. (1994). The validity of this argument depends upon whether fraternal benefit societies are exempt from sales taxes by reason of section 10–14–504, 4A C.R.S. (1994). This is the very question before us. Therefore, Woodmen's reliance on section 39–26–114(1)(a)(III), 16B C.R.S. (1994), begs the question, and section 39–26–114(1)(a)(III) provides no assistance in resolving the scope of the exemption set forth in section 10–14–504, 4A C.R.S. (1994).

### 2.

■ Woodmen also relies on the familiar principle that in case of conflict, a specific statute prevails over a general one. *See* § 2–4–205, 1B C.R.S. (1980). Woodmen contends that section 10–14–504 is specific to fraternal benefit associations, the sales tax act is general, and therefore the exemption provisions of section 10–14–504 prevail. This argument, too, proceeds from a premise that section 10–14–504 does exempt fraternal benefit societies from the later-enacted sales tax. Even if section 10–14–504 can be characterized as the more specific statute—an issue we do not address—we could not apply the principle that the specific prevails over the general until we determine whether section 10–14–504 does exempt fraternal benefit societies from the sales tax act. Thus, reliance on this principle also begs the question and offers no assistance in resolving the scope of the exemption provision in section 10–14–504, 4A C.R.S. (1994).

### V.

Woodmen is not exempt from the sales tax act. Fraternal benefit societies are not cate-gorically exempt under the sales tax act provisions, either specifically, *see* § 39–26–114, 16B C.R.S. (1994), or as charitable organizations, *see* §§ 39–26–114(1)(a)(II), –102(2.5), 16B C.R.S. (1994). We also hold that section 10–14–504, 4A C.R.S. (1994), does not provide an exemption for fraternal benefit societies from the payment of sales taxes for reasons previously discussed.

We therefore reverse the judgment of the court of appeals and return the case to that court with directions to reverse the judgment of the district court and remand for further proceedings consistent with this opinion.

SCOTT, J., does not participate.