COLORADO DEPARTMENT OF REVENUE; and Fred Fisher, in his official capacity as Executive Director of the Colorado Department of Revenue, Petitioners,

v.

CRAY COMPUTER CORPORATION; and Terry Willkom, in his official capacity as Liquidating Trustee of Cray Computer Corporation, Respondents.

No. 99SC367.

Supreme Court of Colorado,
En Banc.

March 5, 2001.

Ken Salazar, Attorney General, Neil L. Tillquist, Assistant Attorney General, Business and Licensing Section, Denver, CO, Attorneys for Petitioner.

Holland & Hart, LLP, Alan Poe, David Butler, Greenwood Village, CO, Attorneys for Respondent.

Justice BENDER delivered the Opinion of the Court.

## I. INTRODUCTION

This appeal requires us to construe the sales tax exemption under the "Urban and Rural Enterprise Zone Act,"[1] for the purchase of used machinery for use in an enterprise zone. We hold that a taxpayer may receive an exemption for only $150,000 of the purchase price.

We briefly explain a few basic tax terms and concepts that are central to this dispute. In this case we determine whether the enterprise zone sales tax exemption[2] incorporates the investment tax credit (ITC) limitation of $150,000 on purchases of used business property.[3] This issue requires an elementary understanding of the difference between the type of tax incentives that the state and federal tax codes provide. Ordinarily, under Colorado law, a taxpayer who purchases retail property must pay a 3% state sales tax on the sale.[4] Therefore, if the taxpayer buys something for $100, she would owe $3 in state sales tax. However, purchases of certain kinds of property for use in economically depressed areas identified as enterprise zones, are exempt from sales tax under the enterprise zone sales tax exemption.[5] If the

hypothetical $100 purchase qualifies for this exemption, no state sales tax is due on the sale.

The enterprise zone sales tax exemption incorporates the Colorado sales tax exemption[6] by reference, which in turn incorporates the qualifications of the ITC even though Congress repealed tax credits for qualified business property in 1990.[7] It is unnecessary to compute the ITC to resolve the issues in this appeal; however, it is helpful to our analysis to understand the distinction between the application of the ITC to purchases of new business property and to purchases of used business property. Under the Internal Revenue Code (I.R.C.), an ITC was available for certain qualified investments as a deduction from a taxpayer's total tax liability, dollar for dollar, as opposed to a deduction from gross income.[8] If a taxpayer makes a qualified investment, such as a purchase of business property, then the taxpayer may claim a tax credit for ten percent of the cost of the property.[9] For example, if a taxpayer paid $200,000 for *new* business machinery, that taxpayer would have a $20,000 credit against her tax liability for the year. Thus, if that taxpayer owed $100,000 in tax that year, then her liability would be reduced by $20,000, resulting in an $80,000 tax liability. However, if a taxpayer paid $200,000 for *used* business property, then only $150,000 of the purchase would be eligible for the ITC.[10] Thus, that taxpayer would receive only a $15,000 tax credit for that year, reducing her $100,000 tax liability to $85,000.

Turning to the specifics of this case, the taxpayer, Cray Computer Corporation, sought to enjoin a decision by the Department of Revenue directing it to pay state and county sales tax on a purchase of used business machinery to the extent the purchase

---

1. § 39–30–101 to –109, 11 C.R.S. (2000).

2. § 39–30–106.

3. I.R.C. § 48(c)(2)(A) (1990) (repealed Nov. 5, 1990).

4. § 39–26–106(1)(a)(I).

5. § 39–30–106(1)(a).

6. § 39–26–114(11).

7. *See* Pub.L. No. 101–508, § 11813, 104 Stat. 1388–537, 541–543 (1990).

8. I.R.C. § 38(b)(1).

9. I.R.C. § 46(b)(1).

10. I.R.C. § 48(c)(2)(A).

exceeded $150,000. The district court ruled against the taxpayer, holding that the enterprise zone sales tax exemption incorporates the $150,000 limitation on tax credit for the purchase of used business property under the I.R.C.

Cray Computer appealed. In *Cray Computer Corp. v. Colorado Department of Revenue*, 988 P.2d 652 (Colo.App.1999), the court of appeals reversed, reasoning that the ITC $150,000 limitation on purchases of used business property, which does not exist for new property, is inconsistent with the purpose and legislative history of the enterprise zone sales tax exemption. *Cray Computer Corp.*, 988 P.2d at 654–655. That court held that the ITC limitation on tax credit for the purchase of used business property should not apply to used property bought for use in an enterprise zone because that limitation has not been incorporated by the enterprise zone sales tax exemption. *See id.* Thus, the court of appeals construed the enterprise zone sales tax exemption to exempt the full purchase price of the used equipment from Colorado sales tax. *Id.* at 655. Therefore, the court of appeals held that Cray Computer may claim an exemption from state and county sales tax for the entire purchase price of used machinery. *Id.* We disagree and reverse.

The unambiguous language of both the Colorado sales tax exemption and the enterprise zone sales tax exemption convinces us that both statutes incorporate the ITC distinction between purchases of new and used business property. Further, we hold that the $150,000 limitation on a purchase of used business property is consistent with the purpose and language of the enterprise zone sales tax exemption. Hence, we hold that only $150,000 of the total purchase price of used business machinery at issue in this case is exempt from sales tax under the enterprise zone sales tax exemption. We reverse the judgment of the court of appeals and remand this case to that court to return to the district court to reinstate its judgment.

## II. FACTS AND PROCEDURAL HISTORY

Cray Computer sold used machinery assets to M/A–COM for approximately $6,585,000. As part of the sale agreement, Cray Computer agreed to pay any sales tax due on the purchase.

Cray Computer filed a declaration of entitlement with the Department, claiming that the machinery purchased qualified for an exemption from state and county sales tax. The Department, however, issued a Notice of Deficiency, directing Cray Computer that El Paso county and state sales tax with interest were due on the sale. Cray Computer protested the Department's determination and requested a hearing. Pursuant to Cray Computer's request, the Executive Director of the Department conducted a hearing to determine the extent of Cray Computer's liability for sales tax on the purchase of used machinery. At the hearing, a former Chief Tax Conferee for the Department testified that the Department had always applied each part of the Colorado sales tax exemption to determine whether taxpayers qualified for an exemption under the enterprise zone sales tax exemption.

The Executive Director relied on this testimony and the language of the enterprise zone sales tax exemption to conclude that the ITC limitation on the purchase of used business property applies to the enterprise zone sales tax exemption via the Colorado sales tax exemption. Thus, the Executive Director issued a Final Determination ruling that only $150,000 of the purchase price at issue is exempt from state and county sales tax under the Urban and Rural Enterprise Zone Act.

Cray Computer appealed the Final Determination of the Executive Director to the district court. That court found that the property bought in this case constituted the kind of property that would qualify for an enterprise zone sales tax exemption. The district court held that the enterprise zone sales tax exemption, construed according to common usage, incorporates all sections of the Colorado sales tax exemption, except where the two are inconsistent. Further, the district court held that in order to give meaning to all of the provisions of the Colorado sales tax exemption, the court must construe

that statute as incorporating the ITC distinction between and treatment of tax credit for the purchase of new and used business property. Thus, the district court affirmed the order of the Executive Director of the Department directing the taxpayer to pay the state and county sales tax on the purchase price in excess of $150,000 plus interest on that amount.

Cray Computer appealed and the court of appeals reversed, holding that there is a material inconsistency between the enterprise zone sales tax exemption and the ITC limitation on tax credit for the purchase of used property. Therefore, it construed the enterprise zone sales tax exemption not to incorporate the $150,000 limitation and held that "the entire purchase price is exempt from taxation." *Cray Computer Corp.*, 988 P.2d at 654–55.

The court of appeals reasoned that the language of the enterprise zone sales tax exemption "does not expressly limit the exemption for machinery in an enterprise zone to new machinery" and additionally, that imposing a limitation on the tax exemption for used business property would undermine the statute's objective to create "incentives for private enterprise to locate in economically depressed areas in order to provide more jobs." *Id.* at 654. The court of appeals found further support for its holding that there exists no distinction between tax exemptions for new and used property under Colorado law in the General Assembly's elimination of the ten million dollar cap on annual purchases available for an enterprise zone sales tax exemption without making such a distinction. *Id.* at 655.

We granted certiorari to determine whether the enterprise zone sales tax exemption, which incorporates by reference the Colorado sales tax exemption, also incorporates the ITC limitation on tax credit for the purchase of used machinery.[11]

## III. ANALYSIS

Colorado applies a state sales tax to all sales of tangible personal property at retail. § 39–26–104(1)(a). The enterprise zone sales tax exemption, however, eliminates an obligation to pay sales tax on purchases of certain kinds of machinery and machine tools for use in an enterprise zone. § 39–30–106(1)(a).[12] An enterprise zone is an area with a population of eighty thousand or less that has a high unemployment rate, a low population growth rate, or a significant low-income population. *See* § 39–30–103(1).

The enterprise zone sales tax exemption provides that the Colorado sales tax exemption, "shall govern the administration of" the enterprise zone sales tax exemption except to the extent that the two statutes are "inconsistent." § 39–30–106(1)(b). The Colorado sales tax exemption in turn provides that

> In order to qualify for the exemption provided in this subsection (11), a purchase must be of such nature that it would have qualified for the investment tax credit against federal income tax as was provided by section 38 of the "Internal Revenue Code of 1954," as amended.

§ 39–26–114(11)(d). It is this reference to the investment tax credit (ITC) and whether it incorporates the limitation on tax credit for

---

11. The precise issue on which we granted certiorari is:

> "Whether the Enterprise Zone Statute, which incorporates by reference the Sales Tax Exemption Statute, also incorporates the used property limitation of the Sales Tax Exemption Statute."

12. The enterprise zone sales tax exemption, section 39–30–106 states:

> (1)(a) On or after July 1, 1995, purchases of machinery or machine tools, or parts thereof, and materials for the construction or repair of machinery or machine tools, in excess of five hundred dollars to be used solely and exclusively in an enterprise zone in manufacturing tangible personal property, for sale or profit,

whether or not such purchases are capitalized or expensed, are exempt from taxation under article 26 of this title.

> (b) The provisions of section 39–26–114(11) shall govern the administration of this subsection (1), except to the extent that such section and this subsection (1) are inconsistent. For purposes of this section, in addition to the definition of "manufacturing" found in section 39–26–114(11)(c), "manufacturing" shall include refining, blasting, exploring, mining and mined land reclamation, quarrying for, processing and beneficiation, or otherwise extracting from the earth or from waste or stockpiles or from pits or banks any natural resource.

the purchase of used business machinery that is in dispute here.

The ITC provided a credit on income tax for purchases of "section 38 property." I.R.C. § 46(a), (c)(1). The Code defined section 38 property as certain types of tangible property, including property used as an integral part of manufacturing. *See* I.R.C. § 48(a)(1)(B)(i). However, the amount of credit a taxpayer could receive for purchases of section 38 property depended on whether the property was new or used. *Compare* I.R.C. § 48(b) (defining new section 38 property) with § 48(c)(2) (placing limitations on the amount of tax credit a taxpayer may claim on purchases of used section 38 property). For purchases of used section 38 property, a taxpayer could only claim an investment tax credit "to the extent of an aggregate cost of ... $150,000." I.R.C. § 48(c)(2)(A).

In this case, both parties concede that the purchase of machinery at issue constitutes the kind of purchase that would receive an exemption under the enterprise zone sales tax exemption. Therefore, the only issue before us is the extent to which this purchase of used business machinery is exempt from sales tax in Colorado. If the ITC limitation on tax credit for the purchase of used machinery applies to the purchase in this case, then only $150,000 of the purchase is exempt from sales tax. Thus, Cray Computer would be liable for sales tax on approximately $6,585,000 minus $150,000, or $6,435,000. If the limitation on tax credit for the purchase of used property does not apply in this case, then the full $6,585,000 is exempt from any sales tax liability.

Cray Computer argues that the limitation on tax credits for purchases of used property does not apply to the enterprise zone sales tax exemption for three reasons. First, it argues that because the Colorado sales tax exemption governs the "administration" of the enterprise zone sales tax exemption, the General Assembly did not intend for the Colorado sales tax exemption to govern substantive principles, such as a $150,000 limit on tax exemptions for purchases of used business property. Secondly, Cray Computer contends that the Colorado sales tax exemption does not incorporate the ITC distinction between and differential treatment of tax credits for the purchase of new and used property. Finally, Cray Computer argues that the ITC limitation on tax credits for the purchase of used business property is inconsistent with the underlying purpose of the enterprise zone sales tax exemption.

We disagree with Cray Computer's arguments and address each in turn.

### A.

The rules of statutory construction guide our interpretation to how the Colorado sales tax exemption "governs the administration" of the enterprise zone sales tax exemption. We construe statutes by giving effect to the intent of the legislature. *Colo. Dep't of Revenue v. Woodmen of the World,* 919 P.2d 806, 809 (Colo.1996). We rely on the language of the statute, giving words their plain and ordinary meaning, to determine legislative intent. § 2–4–101, 1 C.R.S. (2000); *Hall v. Walter,* 969 P.2d 224, 229 (Colo.1998). If a statute is clear and unambiguous, then there is no need to resort to other aids of statutory construction to ascertain the intent of the legislature. *Colo. Dep't of Revenue,* 919 P.2d at 809. In addition, we consider statutes as a whole in order to effectuate legislative intent, and give " 'consistent, harmonious, and sensible effect to all [the statute's] parts.' " *State v. Nieto,* 993 P.2d 493, 501 (Colo.2000).

Cray Computer argues that the word "administration" in the enterprise zone sales tax exemption refers only to procedural matters such as the filing of forms and the coordination of the exemption with credits for taxes paid to other states. *See* § 39–26–114(11)(e) (regarding credits for sales tax paid in other states); -(f) (regarding the filing of a declaration of entitlement to receive an exemption). Cray Computer classifies the imposition of a limit on the amount which a taxpayer may claim a sales tax exemption as a substantive, not an administrative, qualification requirement.

The enterprise zone sales tax exemption statute does not define "administration." However, the district court in this case ad-

dressed the meaning of "administration" and held that it is not limited to the management of procedural matters.[13] A second Denver district court ruled similarly that in the enterprise zone sales tax exemption statute "the most reasonable interpretation of the word 'administration' . . . includes the application of both substantive and procedural law." [14]

██ We agree with both these courts that the common usage of "administration" does not limit governance to procedural matters. We may refer to a dictionary to determine the common usage of a statutory word. *Price v. City of Lakewood,* 818 P.2d 763, 767 (Colo.1991). Administration is defined in pertinent part as: "The act of administering; management; specifically, the management of governmental or institutional affairs." *Webster's New World College Dictionary* 17 (3d ed.1996). This definition does not distinguish between the management of procedural and substantive matters. Thus, we conclude that the common usage of the term "administration" includes both procedural and substantive matters, and so read the enterprise zone sales tax exemption's use of the word "administration" accordingly.

Further, reading the enterprise zone sales tax exemption statute as a whole, it implies that "administration" refers to more than procedural provisions. For example, immediately after stating that the Colorado sales tax exemption shall govern its administration, this statute mandates that "in addition to the definition of 'manufacturing' found in section 39–26–114(11)(c)" manufacturing under this section shall include things such as refining, exploring and mining. § 39–30–106(1)(b). The words "in addition to the definition of manufacturing" indicate that the General Assembly broadened the definition of "manufacturing," which would apply only to calculating the sales tax exemption for purchases of business property for use in an enterprise zone. The narrower definition of

manufacturing would apply to the calculation of sales tax on purchases of business property for use outside of an enterprise zone. Therefore, the term "administration" as it is used in this statute is substantive since it defines what type of property qualifies for an exemption in the enterprise zone.

Hence, construing the statute as a whole and according to its plain meaning, we hold that the enterprise zone sales tax exemption incorporates all parts of the Colorado sales tax exemption, not just those parts concerning procedural matters, except to the extent that the two statutes, the Colorado sales tax exemption and the enterprise zone sales tax exemption, are inconsistent. *See* § 39–30–106(1)(b) (incorporating the Colorado sales tax exemption except to the extent the statutes are inconsistent).

██ Although we decide this issue based on the unambiguous language of the statute, and thus do not look to other sources for legislative intent, we note that our decision is consistent with earlier agency determinations. We may give deference to the construction of a statute by an agency charged with its administration. *See Colo. State Pers. Bd. v. Dep't of Corrections, Div. of Adult Parole Supervision,* 988 P.2d 1147, 1150 (Colo.1999). Testimony given during the Department hearing in this case indicates that the Department has consistently applied each provision of the Colorado sales tax exemption to the enterprise zone sales tax exemption, except where they are inconsistent. Thus, agency decisions confirm our construction of the unambiguous language of the enterprise zone sales tax exemption statute.

### B.

██ Next we address whether the Colorado sales tax exemption incorporates the ITC distinction between the treatment of tax credit for the purchase of new business property (no limitation) and the purchase of used business property ($150,000 limitation).

---

**13.** The district court in this case relied on *Black's Law Dictionary* for the definition of administration, which is in pertinent part: "1. The management or performance of the executive duties of a government, institution, or business. 2. In public law, the practical management and direction of the executive department and its agencies." *Black's Law Dictionary* 44 (7th ed.1999).

**14.** *CF & I Steel Corp. v. Colo. and Wyo. R.R. Co.,* No. 92 CV 6750, slip op. at 4 (Colo.Dist.Ct. March 2, 1993) (Bayless, J.)

The Colorado sales tax exemption statute provides that in order to qualify for an exemption, "a purchase must be of such nature that it would have qualified for the investment tax credit against federal income tax." § 39–26–114(11)(d). Purchases of "used section 38 property" qualified for an investment tax credit, *see* I.R.C. § 46(a), § 46(c)(1)(B), but "only to the extent of an aggregate cost of … $150,000." I.R.C. § 48(c)(2)(A). The I.R.C. defined "used section 38 property" as certain kinds of tangible property, the original use of which does not begin with the taxpayer. *See* I.R.C. § 48(a) (defining section 38 property); (c)(1) (defining used section 38 property as not new section 38 property); (b)(1) (defining new section 38 property as section 38 property "the original use of which commences with the taxpayer").

. Cray Computer construes the language "a purchase must be of such nature that it would have qualified for the investment tax credit" to mean that the Colorado sales tax exemption only incorporates limitations on the *type* of purchase that qualifies for an investment tax credit and thus does not incorporate limitations on the *calculation* of an investment tax credit. In other words, Cray Computer argues that the Colorado sales tax exemption should be construed to incorporate only the definition of section 38 property (a limitation on the *type* of purchase qualifying for the ITC) and not the dollar limitation on tax credit for the purchase of used business property (a limitation on the *calculation* of the ITC).

The language of the Colorado sales tax exemption statute, however, does not support Cray Computer's construction. The Colorado sales tax exemption statute does not limit the ways in which a purchase must qualify for an ITC. Rather, it simply states that to receive a Colorado sales tax exemption, a purchase "must be of such nature that it would have qualified" for an ITC. § 39–26–114(11)(d). The statute creates no exceptions to these qualifications and thus we will not infer one. *Golden Animal Hosp. v. Horton,* 897 P.2d 833, 836 (Colo.1995) ("For the court to infer an implied exception is tantamount to judicial legislation."). Hence, we

hold that the Colorado sales tax exemption unambiguously incorporates the ITC limitation on tax credit for the purchase of used business property.

■ Further, we note that if we were to construe this statute as ambiguous, then there is a "strong presumption that taxation is the rule and exemption the rare exception." *Colo. Dep't of Revenue,* 919 P.2d at 810. We resolve ambiguity regarding the application of tax exemptions in favor of the taxing authority unless the party claiming an exemption clearly establishes a right to the exemption. *General Motors Corp. v. City and County of Denver,* 990 P.2d 59, 74 (Colo. 1999). Cray Computer has not established that the Colorado sales tax exemption statute fails to incorporate the ITC $150,000 limitation on tax credit for the purchase of used section 38 property; hence, even if the statute were ambiguous, then we would construe this statute in favor of the Department.

### C.

■ Because the enterprise zone sales tax exemption provides that the Colorado sales tax exemption governs the administration of the enterprise zone sales tax exemption except to the extent that the two statutes are "inconsistent," we now turn to a discussion of whether the ITC distinction between tax credit for the purchase of new and used business property, incorporated through the Colorado sales tax exemption, is inconsistent with the enterprise zone sales tax exemption. We disagree with the court of appeals' conclusion and hold that the ITC distinction between purchases of new and used property is consistent with the purposes of the Urban and Rural Enterprise Zone Act.

On the face of the enterprise zone sales tax exemption statute there exists no express inconsistency with a limitation on tax exemptions for purchases of used machinery. The only monetary limit found in the enterprise zone sales tax exemption is a threshold limit that the purchase must be "in excess of five hundred dollars" to claim any exemption. § 39–30–106(1)(a).

However, the court of appeals concluded, and the taxpayer urges us to agree, that the

ITC used business property limitation is inconsistent with the purpose of the enterprise zone sales tax exemption, which is to "provide incentives for private enterprise to locate in economically depressed areas in order to provide more jobs." *Cray Computer Corp.*, 988 P.2d at 654. On the other hand, the Department argues that the purpose of the ITC, and in particular the distinction between tax credit for the purchase of new and used property, is consistent with the purpose of the enterprise zone sales tax exemption.

The Enterprise Zone Act was enacted to "provide incentives for private enterprise to expand and for new businesses to locate in such economically depressed areas and to provide more job opportunities for residents of such areas." § 39–30–102(2).

The ITC was enacted for the similar purpose to improve "the economic potential of the country, with a resultant increase in job opportunities." S.R. No. 1881, at 11 (1962), *reprinted in* 1962 U.S.C.C.A.N. 3304, 3314. The ITC favored purchases of new property over purchases of used property by placing limits on the amount of used property purchases that qualified for tax credits. The favorable treatment of new over used business property was for the express purpose "of increasing the earnings of new facilities over their productive lives and increasing the profitability of productive investment." *Id.* Thus, purchases of new property were encouraged to increase the profitability and life of an investment, which would result in greater job opportunities.

Underlying the court of appeals' reasoning that the statutes are inconsistent is the notion that *any* limit on incentives for growth in an economically depressed area would be contrary to the purpose of the Urban and Rural Enterprise Zone Act. However, the statute compels us only to consider whether the statutes are consistent. To be consistent means to be in agreement, harmony, or accord. *Webster's New World College Dictionary* 297 (3d ed.1996). Although the enterprise zone sales tax exemption is intended to target specific, economically depressed areas while the investment tax credit applied to the nation as a whole, both statutes were enacted

to stimulate economic growth. Further, the specific federal policy of favoring new purchases of property to increase the long-term success and profitability of business aims to boost the economy. Thus, the purposes of the enterprise zone sales tax exemption and the ITC limitation on tax credit for purchases of used property are in agreement. They both aim to create an economy that will provide greater opportunities for employment. Therefore, we conclude that the distinction between new and used property embodied in the ITC is consistent with the underlying purpose of Colorado's enterprise zone sales tax exemption.

The taxpayer argues that the 1995 amendment to the enterprise zone sales tax exemption statute provides another basis for finding that these two statutes are inconsistent. The court of appeals agreed; however, we are not persuaded.

Prior to 1995, the enterprise zone sales tax exemption applied only "to the extent that such purchases do not exceed ten million dollars in each calendar year; except that, on or after January 1, 1988, all such purchases in excess of five hundred dollars are exempt from such taxation, without regard to monetary amount." § 39–30–106(1)(a), 16B C.R.S. (1994). The court of appeals reasoned that because the General Assembly deleted all of the above language from the enterprise zone sales tax exemption without making a distinction between exemptions available for purchases of new and used property, the General Assembly did not intend for such a distinction to exist. *Cray Computer Corp.*, 988 P.2d at 655; *see* ch. 49, sec. 2, § 39–30–106, 1995 Colo. Sess. Laws 137, 137–138.

Absent statutory language indicating otherwise, we will not speculate on the legislature's intent when it eliminated the language regarding a cap on the amount of a purchase eligible for an enterprise zone sales tax exemption. Even if we were to engage in such conjecture, then we could more readily conclude that the General Assembly intended to adopt the limitation for tax exemption for purchases of used property imposed through the express reference to the Colorado sales tax exemption, than to adopt the court of appeals' conclusion urged by the taxpayer.

We conclude that the 1995 Amendment to the enterprise zone sales tax exemption statute does not indicate that the ITC limitation on tax credit for the purchase of used business property is inconsistent with the enterprise zone sales tax exemption.

Hence, we conclude the enterprise zone sales tax exemption and the ITC limitation on tax credit for the purchase of used property are consistent and hold that the enterprise zone sales tax exemption statute incorporates the ITC $150,000 limitation on purchases of used business property.

## IV. CONCLUSION

In this case, the used machinery purchase qualifies for an exemption under the enterprise zone sales tax exemption. Because the ITC limitation on tax credit for the purchase of used business property applies to the enterprise zone sales tax exemption, we rule that Cray Computer is liable for state sales tax to the extent the purchase price at issue exceeded $150,000. Further, the parties agree that Cray Computer's liability for El Paso County sales tax is governed by the Colorado sales tax exemption. Thus, because we hold that statute also incorporates the $150,000 limitation on tax credit for the purchase of used property, Cray Computer is also liable for county sales tax on the purchase to the extent the purchase exceeds $150,000.

We reverse the judgment of the court of appeals and direct that court to return this case to the district court for the reinstatement of its judgment.