Thomas SMITH, Petitioner,

v.

**FARMERS INSURANCE EXCHANGE**
and Mid–Century Insurance
Company, Respondents.

No. 99SC133.

Supreme Court of Colorado,
En Banc.

Sept. 11, 2000.

Steven T. Nolan, Colorado Springs, Colorado, Winston & Winston, P.C., Joseph R. Winston, Colorado Springs, Colorado, Attorneys for Petitioner.

Retherford, Mullen, Johnson & Bruce, LLC, Anthony A. Johnson, Neil C. Bruce, Colorado Springs, Colorado, Attorneys for Respondents.

Justice RICE delivered the Opinion of the Court.

## I. Facts and Procedural History

On March 11, 1992, Thomas Smith, the Petitioner, was involved in an automobile accident in which he was injured. At the time of the accident, Smith possessed no-fault automobile insurance issued by Farmers Insurance Exchange and Mid–Century Insurance Company, the Respondents (hereinafter Farmers). In November 1992, Smith underwent surgery on his neck due to the injuries sustained in the accident. Farmers paid for costs related to this first surgery.

According to Smith's treating physician, the surgery was unsuccessful. The physician recommended that Smith see a specialist in Arizona for a second surgery on his neck. Smith, through his attorney, informed Farmers that he needed a second surgery and sought pre-approval. According to Smith, Farmers approved the surgery at that time but later advised him immediately before the surgery that he would have to wait for independent review from another physician.[1] Smith proceeded with the surgery in August 1993, and received follow-up care.

Following the second surgery, Farmers informed Smith that it would not pay for his second surgery and related costs because his medical expense benefits were exhausted and the rehabilitation expense portion of his insurance policy did not cover his treatment. When Farmers refused to pay the medical bills associated with the second surgery, Medicare paid a portion of the bills pursuant to 42 U.S.C. § 1395y (1993), the Medicare Secondary Payer (MSP) provisions of the Social Security Act. Smith received collection

---

1. According to Farmers, it never approved the second surgery. However, this disputed fact is not pertinent to the issue before us.

notices for the remainder of the bills unpaid by Medicare.[2]

Smith filed suit, alleging that his medical expenses were covered under the no-fault statutory provisions of section 10–4–706, 3 C.R.S. (1993), or, alternatively, under the language of the insurance policy. Smith also alleged that Farmers acted in bad faith in denying payment. After trial, the jury found in favor of Farmers on the No–Fault Act claim, but found that Farmers had breached the insurance contract and the breach was in bad faith. The jury returned a verdict for Smith for $33,300.89 on the breach of contract claim and for $1,700 on the bad faith claim. The amount of actual damages equaled the entire cost of Smith's surgery and related costs, including the Medicare payment, the unpaid bills from medical providers,[3] and any deductibles and copayments.

Farmers filed a motion for a new trial. The trial court did not rule on the motion within sixty days and it was deemed denied pursuant to C.R.C.P. 59(j).

Farmers appealed to the Colorado Court of Appeals, which reduced the damages award to $14,772, the amount of the conditional payment by Medicare, plus the amount of any co-payments and deductibles. The court of appeals ruled that the health care providers were precluded by federal law from pursuing Smith for the balance of their bills above the Medicare payment, but that they could recover the difference from the insurers. Consequently, the court of appeals stated that Smith was only entitled to the amount necessary to repay Medicare plus compensation for his co-payments and deductibles.

This court granted certiorari on the issue whether the court of appeals erred in reducing the trial court's damage award to the amount of the conditional payment by Medicare plus the amount of any co-payments and deductibles, based on the court's ruling that applicable federal statutes prevented the medical providers from seeking to recover their full charges from Smith.[4] We hold that the court of appeals erred in limiting damages to the amount of the Medicare payment plus any deductibles and co-payments. Additionally, we hold that the charge limitation in 42 U.S.C. § 1395cc(a)(1)(A) does not apply to limit the amount a medical provider can collect from an insured who has collected from his no-fault insurance company in a situation in which Medicare has made a conditional payment under 42 U.S.C. § 1395y(b)(2)(B)(I), and the no-fault insurance company later is found responsible as the primary insurer.

## II. Measure of Damages

Generally, in a breach of contract action, a plaintiff may recover the amount of damages necessary to place him in the same position he would have occupied had the breach not occurred.[5] *See Pomeranz v. McDonald's Corp.*, 843 P.2d 1378, 1381, (Colo. 1993). In this case, the measure of damages depends, then, on the amount that Smith owes to Medicare and to his medical providers; costs that should have been paid by Farmers.[6] At issue is whether the medical

**2.** The MSP provisions require Medicare to pay for costs and services that are reasonable and necessary, or the customary charges for such services. *See* 42 U.S.C. § 1395f(b) (1993); 42 C.F.R. § 411.33. Smith was receiving bills for amounts beyond what Medicare covered.

**3.** Smith offered into evidence copies of bills and collection notices received from his medical providers to establish the amount of unpaid bills.

**4.** The issue upon which we granted certiorari read as follows: "Whether the court of appeals erred in reducing the trial court's damage award to $14,772, the amount of the conditional payment by Medicare, plus the amount of any co-payments and deductibles."

**5.** We note that our analysis is limited to the actual damages awarded in this case. The punitive damages awarded in the amount of $1,700 based on the bad faith claim are not at issue here.

**6.** The fact that Smith did not actually pay the bills submitted by the medical providers is irrelevant; the measure of damages was correctly calculated as the total of the medical bills received by Smith, plus the Medicare payment, minus any applicable deductibles and co-payments. *Cf. Gowan v. United States Dep't of the Air Force*, 148 F.3d 1196, 1198 (10th Cir.1998) (finding no abuse of discretion where lower court reopened case to determine measure of damages as amount of medical bills minus applicable deductibles and co-payments); *Hart v. Allstate Ins. Co.*,

providers can collect from Smith medical costs in excess of the Medicare payment.

Smith argues that his damages are equal to the amount he owes Medicare, plus the amount he was billed by medical providers in excess of the Medicare payment. He alleges that the court of appeals erroneously applied 42 U.S.C. § 1395cc(a)(1)(A) to require that the medical providers must agree not to charge any individual or any other person for items or services when such individual is entitled to have payment made by Medicare. Smith argues that this particular provision does not apply to conditional payments made under the MSP provisions.

In contrast, Farmers asserts that Smith's actual loss is limited to the amount of the Medicare conditional payment because the providers were precluded from pursuing collection of the total amount billed for their services once they accepted the Medicare payment. Farmers points to section 1395cc(a)(1)(A), titled "Agreements with providers of services," for support, which states that "any provider of services ... shall be ... eligible for payments under this subchapter if it [agrees] not to charge ... any individual or any other person for items or services for which such individual is entitled to have payment made under this subchapter."

A resolution of this issue requires an analysis of the Social Security statutes at issue, the governing regulations, and their application to the facts before us.

### III. Medicare Provisions

The Medicare Program served as the primary payer for all services to Medicare beneficiaries for fifteen years.[7] *See* Social Security Amendments of 1965, Pub.L. No. 89–97, 79 Stat. 286 (1965); *see also Oregon Ass'n of Hosps. v. Bowen,* 708 F.Supp. 1135, 1139 (D.Or.1989); Robert L. Roth, *The Medicare Secondary Payer Program: New and Con-*

*tinuing Issues,* American Bar Ass'n. Center for Continuing Legal Educ. Nat'l Inst. (Oct. 22—23 1998). Through a prospective payment system, medical providers who agree to accept primary payment from Medicare are paid a flat fee based on an average cost and length of stay for over 400 medical diagnoses, which are grouped together in "diagnostic related groups" (DRGs). *See* 42 U.S.C. § 1395ww (1999); 42 C.F.R. 412. If a provider's actual costs fall below the DRG amount, it keeps the difference; however, if a provider's actual costs are greater than the DRG amount, the provider must absorb the loss itself. Medical providers participating in the prospective payment system enter into an agreement with Medicare, in which they agree to accept payments limited to the DRG amount, and they agree "not to charge ... any individual or any other person for items or services for which such individual is entitled to have payment made under [subchapter 18]." 42 U.S.C. § 1395cc(a)(1)(A).

In order to take advantage of the Medicare Primary Payer Program, most private third party payers drafted their Coordination of Benefits provisions to ensure that Medicare was the primary payer when an insured was also eligible for Medicare. *See* Dechene, *supra* note 7, at 203–04.

Consequently, in 1980 Congress enacted the (MSP) statute in an effort to reduce the costs of the Medicare program by making Medicare the secondary payer in certain situations. *See* 42 U.S.C. § 1395y(b)(1) (1980). The MSP provisions prohibit Medicare from making payment when "payment has been made, or can reasonably be expected to be made" by a group health plan, workers' compensation plan, an automobile or liability insurance plan, or a no-fault insurance plan. *See* 42 U.S.C. § 1395y(b)(2)(A). However, under the MSP provisions and relevant to this case, Medicare will make a conditional payment as a secondary payer where prompt

---

437 So.2d 823, 827 (La.1983) (holding that medical bills submitted to insurer established "satisfactory proof of loss," to show that insurer's failure to pay was arbitrary and capricious).

7. The only two exceptions were services covered under workers' compensation and services available through federal hospitals, such as Veterans' Hospitals. *See* Robert L. Roth, *The Medicare*

*Secondary Payer Program: New and Continuing Issues,* American Bar Assoc. Center for Continuing Legal Educ. Nat'l Inst. (Oct. 22—23, 1998); James C. Dechene, *Public Health Care Reimbursement Programs, in* Commercial Law and Practice Course Handbook Series, 151, 203—04 (Practicing Law Institute ed., 1993).

payment by an insurer is delayed. *See* 42 U.S.C. § 1395y(b)(2)(B) (1996); 42 C.F.R. § 411.53(a). Payment is "conditioned on reimbursement to the appropriate Trust Fund established when notice or other information is received that payment for such item or service has been or could be made" by an employer's insurance plan. 42 U.S.C. § 1395y(b)(2)(B)(i). In addition, the MSP statute furnishes the federal government with a direct and subrogated right to bring an action to recover conditional payments "against any entity which is required or responsible ... to pay ... or against any other entity (including any physician or provider) that has received payment from that entity." 42 U.S.C. § 1395y(b)(2)(B)(ii).

## IV. Application

The measure of actual damages in this case depends on whether the limitation contained in 42 U.S.C. § 1395cc(a)(1)(A), that medical providers agree not to charge any individual for items or services for which such individual is entitled to have payment made by Medicare, applies when Medicare makes a payment to a provider as a secondary payer, rather than as a primary payer. We conclude that this limitation does not apply when Medicare makes a conditional payment *and* a no-fault insurance company subsequently is held responsible as the primary payer. The limiting charge provision of 42 U.S.C. § 1395cc(a)(1)(A) does not address the situation where Medicare makes a conditional payment under 42 U.S.C. § 1395y(b)(2)(B)(i), and a no-fault insurance company is ultimately held responsible for medical care provided to an insured. However, although the limiting charge statute does not address the particular facts presented in this case, regulations promulgated by the Department of Health and Human Services (DHHS) have addressed this situation, allowing providers to collect from an insured the amount the third party payer has paid the insured for covered services.

---

8. Two circuits have held that the limiting charge statute prohibits a medical provider from seeking additional payment from a beneficiary regardless of whether the Medicare payment has been reimbursed. *See Rybicki v. Hartley,* 792 F.2d 260, 261—62 (1st Cir.1986); *see also Evanston Hosp.*

## A. The Governing Statute and Regulations

A court's primary task in interpreting a statute is to give effect to the legislative purpose underlying its enactment. *See Griffin v. Devanney,* 775 P.2d 555, 559 (Colo. 1989). To determine the legislative purpose, we first look to the language of the statute itself, giving words and phrases their commonly accepted and understood meaning. *See id.; see also Askew v. Industrial Claim Appeals Office,* 927 P.2d 1333, 1337 (Colo. 1996).

The limiting charge statute states:

(1) Any provider of services ... shall be qualified to participate under this subchapter and shall be eligible for payments under this subchapter if it files with the Secretary an agreement—

(A) not to charge ... any individual or any other person for items or services for which such individual is entitled to have payment made under this subchapter....

42 U.S.C. § 1395cc(a). The statute applies to payments made by Medicare under subchapter 18 of the Social Security Act, which includes both primary and secondary payments. Under the primary payer statute, these costs are limited to the DRG amounts. Under the secondary payer statute, these costs are limited to costs that are reasonable and necessary or customary. *See* 42 U.S.C. § 1395(f). The limiting charge statute clearly constrains a provider's ability to seek additional payment from a beneficiary when a beneficiary is entitled to Medicare payments.

However, the statute does not address the situation where a no-fault insurance company is identified as the primary insurer for the medical costs incurred after Medicare makes a conditional payment. Consequently, the statute is of little help in resolving the question at hand.[8]

---

*v. Hauck,* 1 F.3d 540, 544 (7th Cir.1993) (following *Rybicki* in holding that "once the government has paid, the hospital or doctor accepting the money agrees to abandon all rights to further payment"). However, both cases involved liability settlements, and are accordingly governed by

Nevertheless, the agency in charge of implementing the Medicare provisions, the (DHHS), has implemented regulations to address this particular situation. If a statute is silent or ambiguous with respect to a specific issue, we give great deference to an agency's interpretation of the statute, looking only to whether the agency's regulation is based on a permissible construction of the statute. *See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *U.S. West, Inc. v. Federal Communications Comm'n*, 182 F.3d 1224, 1231 (10th Cir.1999).

Section 411.35 of the Code of Federal Regulations in particular addresses the situation where a provider seeks to obtain payment from a beneficiary who has received payment from a third party payer, stating:

> [T]he amounts the provider or supplier *may collect* or seek to collect, for the Medicare-covered services *from the beneficiary* or any entity other than the workers' compensation plan, the no-fault insurer, or the employer plan are limited to the following:
>
> *(1) the amount paid or payable by the third party payer to the beneficiary.* If this amount exceeds the amount payable by Medicare ... the provider or supplier may retain the third party payments in full without violating the terms of the provider agreement....

(Emphasis added.) This regulation directly addresses the situation presented here: the medical providers who treated Smith are seeking to collect the amount paid by Farmers to Smith for Medicare-covered services. The regulation explicitly states that a provider is not limited to the amount of conditional payment made by Medicare once a third-party payer is obligated to make payment.[9]

Section 411.35 applies when another health insurer is primary to Medicare services, and limits the amount a provider can collect or seek to collect to the amount "paid or payable" to the beneficiary by the primary insurer. In the case before us, Farmers is the primary insurer. The providers can collect the amount paid by Farmers to the beneficiary for the Medicare-covered services. The statute acknowledges that this amount may exceed the amount payable by Medicare, and states that a provider may collect the full amount without violating 42 U.S.C. § 1395cc(a)(1)(A). The underlying policy of the MSP statute supports this interpretation.

## B. Policy

Our conclusion is consistent with the dual intent of the MSP provisions to reduce Medicare costs and protect beneficiaries. *See* Omnibus Budget Reconciliation Act of 1980, Pub.L. No. 96–499, § 900, 94 Stat. 2599 (1980); 135 Cong. Rec. § 13057–03 (Oct. 12, 1989); *see also Zinman v. Shalala*, 67 F.3d 841, 845 (9th Cir.1995) (stating that the purpose of MSP provisions is to reduce the costs of the Medicare program). Prohibiting medical providers from suing beneficiaries for the difference between actual charges and a Medicare conditional payment protects Medicare-covered beneficiaries from being personally liable to medical providers. However, once a beneficiary has been awarded a settlement from a primary no-fault insurer who is found to be responsible for coverage for the medical costs incurred by the beneficiary, there is no reason to prohibit a provider from collecting the excess amount owed on medical bills.

It would be against public policy to allow a primary insurer to financially benefit from its breach of contract with a beneficiary

---

42 C.F.R. § 411.54, which prohibits billing a *liability* insurer or a beneficiary for Medicare-covered services. Neither circuit addressed the MSP provisions as they relate to no-fault insurance and the effect of 42 C.F.R. § 411.35.

**9.** We find additional support in 42 C.F.R. § 411.31, which states:

    (a) the fact that Medicare payments are limited to the DRG amount, or the reasonable charge, reasonable cost, capitation or fee

schedule rate, does not affect the amount that a third party payer may pay.

    (b) with respect to ... no-fault insurers ... a provider or supplier may bill its full charges and expect those charges to be paid....

Although this regulation addresses a situation in which a provider seeks payment directly from a third-party payer, the plain language indicates that a medical provider may bill a no-fault insurer for its *full* charges, regardless of the limitations on Medicare payments.

by limiting its liability to the Medicare amount. In this case, a jury found that Farmers breached its contract with Smith when it refused to pay for a second surgery and awarded actual damages in the amount of the Medicare payment and the excess owed to the medical providers. In addition, the jury awarded punitive damages after finding that Farmers' breach was in bad faith. Compelling Farmers to pay damages only in the amount of the Medicare payment would in effect reward Farmers for breaching its contract with Smith. Although the medical providers could pursue Farmers directly for payment, they chose instead to bill Smith. Smith, then, should have the option of seeking damages from Farmers that include costs owed to the providers.

It certainly is not the intent or purpose of the MSP provisions to discourage primary no-fault insurers from fulfilling their obligations as primary insurers under the Medicare statute. In fact, the Medicare statute and related regulations include various provisions designed to compel insurers to offer primary coverage and make timely payments, and to penalize insurers for their failure to do so. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii), (3)(A) (authorizing a cause of action for double damages against a primary plan that paid a beneficiary rather than the government and knew or should have known of the government's rights); 42 U.S.C. § 1395y(b)(2)(B)(iii) (granting the government subrogation rights); 42 C.F.R. § 411.23(b) (requiring a beneficiary to cooperate with Medicare in recovering a third-party payment); 42 C.F.R. § 411.24(b) (permitting the government to file a direct action against any entity responsible for payment); 42 C.F.R. § 411.24(g); 42 C.F.R. § 411.24(h) (requiring a beneficiary to reimburse Medicare within sixty days of receipt of a third-party payment).

These various provisions of the MSP statute and related regulations clearly indicate that the primary intent underlying the MSP provisions is to shift the financial burden of health care from Medicare to private insurers and thereby lower Medicare's costs. Accordingly, both the governing regulations and the underlying policy concerns support

our holding that a medical provider may seek full reimbursement from an insured who has collected from a primary no-fault insurer the amount of a conditional Medicare payment plus medical costs in excess of that conditional payment.

## V. Conclusion

We hold that the charge limitation in 42 U.S.C. § 1395cc(a)(1)(A) does not apply to limit the amount a medical provider can collect from an insured who has collected from a no-fault insurance company in a situation in which Medicare has made a conditional payment under 42 U.S.C. § 1395y(b)(2)(B)(I), and a no-fault insurance company is responsible as a primary payer. Accordingly, we hold that the court of appeals erred in limiting damages to the amount of the Medicare payment plus any deductibles and co-payments. The jury award of actual damages for $33,300.89 on the breach of contract claim is affirmed.