**Roxy HUBER, Executive Director of the Department of Revenue, State of Colorado, Petitioner,**

v.

**Matthew KENNA, Janet Kenna, Pete Skartvedt, and Ann Rilling, Respondents.**

**No. 07SC657.**

Supreme Court of Colorado, En Banc.

April 20, 2009.

John W. Suthers, Attorney General, Ana Cristina Bowman, Assistant Attorney General, Daniel Desmond Domenico, Solicitor General, Denver, Colorado, Attorneys for Petitioner.

Matt Kenna, Durango, Colorado, Attorney for Respondents.

Nicholls & Associates, P.C., Jon Nicholls, Denver, Colorado, Attorney for Amici Curiae, Bandt Unlimited Partnership and The Conservatorship Estate of Marian S. Ling.

Justice EID delivered the Opinion of the Court.

The General Assembly in 1999 passed the Conservation Easement Tax Credit Act, which created a $100,000 state income tax credit for taxpayers who donate a property easement for conservation purposes. § 39–22–522, C.R.S. (1999). The respondents are two married couples who purchased property as tenants in common and subsequently donated a conservation easement. Respondents split the value of the donated easement—$154,700—in half, with each couple claiming a tax credit of $77,350 on their tax returns.

In 2003, petitioner Colorado Department of Revenue issued notices of deficiency to each couple on the ground that their tax credits exceeded the $100,000 limit. Respondents contested the notices of deficiency, arguing that the statute allowed each couple to claim up to a $100,000 credit. The Department denied relief on the ground that the statute allowed an aggregate $100,000 credit per donation. The district court reversed the Department's decision, and the court of appeals affirmed. *Kenna v. Huber*, 179 P.3d 189, 193 (Colo.App.2007).

We now reverse the court of appeals. The appellate court focused exclusively on the fact that the statute allowed "a credit with respect to the income taxes ... to each taxpayer" who donates "all or part of the value of" a conservation easement. *See* § 39–22–522(2). The court concluded from this language that each of the couples could claim a tax credit up to the $100,000. *Kenna*, 179 P.3d at 192. However, the statute limits the "amount of the credit allowed [to] one hundred thousand dollars *per donation.*" § 39–22–522(4), C.R.S. (1999) (emphasis added). Thus, although each taxpayer who donates a conservation easement may claim a tax credit, the statute expressly limits the *amount* of that credit to an aggregate total of $100,000 per donation. Because the tax credits claimed by respondents exceeded the $100,000 per donation limit, we hold that the Department correctly issued the notices of deficiency to the respondents. Accordingly, we reverse the court of appeals and remand the case for further proceedings consistent with this opinion.

**I.**

The Conservation Easement Tax Credit Act ("the Act") entitles taxpayers who donate

a conservation easement to claim a tax credit against their income taxes. § 39–22–522, C.R.S. (1999). As enacted in 1999, the section limited the amount of any tax credit to up to $100,000 of the fair market value of the donated conservation easement.[1] *Id.* The 1999 statute read:

> [S]ubject to the provisions of subsection[ ](4) ... of this section, there shall be allowed a credit with respect to the income taxes ... to each taxpayer who donates during the taxable year all or part of the value of a perpetual conservation easement in gross ... upon real property the taxpayer owns to a governmental entity or a charitable organization.

§ 39–22–522(2), C.R.S. (1999). "Taxpayer" was defined as "a resident individual or a domestic or foreign corporation." *Id.* at 522(1), C.R.S. (1999).

The Act created a tax credit equal to the market value of the donated easement, limiting the "amount of the credit allowed [to] one hundred thousand dollars *per donation.*" *Id.* at 522(4) (emphasis added). If the credit exceeded the amount of income tax owed by the taxpayer for that year, the excess amount would "roll over" to be applied against future income taxes for each of the next twenty years. § 39–22–522(5), C.R.S. (1999). In 2001, the General Assembly amended section 522 to limit to $100,000 the total aggregate tax credit allowed for "a partnership, S corporation, or other similar pass-through entity that donates a conservation easement as an entity." § 39–22–522(5), C.R.S. (2001). In 2006, the General Assembly amended section 522 to include a tenancy in common as another type of ownership group restricted by the $100,000 limit. *See* § 39–22–522(4)(b), C.R.S. (2006).

The respondents are two married couples who purchased a 37–acre property in La Plata County as tenants in common in June 1998. Anticipating the section 522 tax benefits, respondents purchased the property with the goal of transferring it to Durango Nature Studies, a nature conservancy group. They subsequently donated a conservation easement to the La Plata Open Space Conservancy in January 2000, and then sold their respective property interests at a reduced rate to Durango Nature Studies.

Respondents split the value of the donated easement—$154,700—in half, equaling a tax credit of $77,350 per couple. For the tax years 2000 and 2001, each couple claimed credits and refunds for the donation of the conservation easement without objection from the Department.[2]

In December 2002, the Department issued a regulation—which came into effect in 2003—limiting the total credit garnered by donations from tenancies in common to $100,000. 1 Colo.Code Regs. § 201–2, Regulation 39–22–522(2)(e)(I) (2003) ("the Department's 2003 regulation"). The Department then issued notices of deficiency to each couple in order to recoup the tax credits issued in excess of the $100,000 per donation limit.[3] Respondents contested the notices of deficiency. The Department denied relief in April 2005, holding that the statute only allowed for one credit of up to $100,000 per donation, and that members of a tenancy in common must split that single credit.

Respondents appealed the Department's decision to the district court, which granted summary judgment in favor of respondents. The court reasoned that, because the legislature's 2001 amendment to section 522 did not include tenants in common among those taxpayers required to split the $100,000 tax credit, the Department's 2003 regulation—which included tenants in common—was void as an improper extension of section 522.

---

1. The General Assembly subsequently increased that limit to $260,000: "one hundred percent credit for the first one hundred thousand dollars of the fair market value of the [easement,] and forty percent of all amounts of the donation in excess of one hundred thousand dollars; except that in no case shall the credit exceed two hundred sixty thousand dollars per donation." § 39–22–522(4)(a)(I), C.R.S. (2001).

2. Part of the credits "rolled over" into tax year 2001 because neither couple owed the full $77,350 for tax year 2000.

3. The notices of deficiency were issued within the six-year statute of limitations pursuant to section 39–21–107(2), C.R.S. (2008), and the respondents do not argue otherwise.

The court of appeals affirmed the trial court's ruling. *Kenna*, 179 P.3d at 193. The court held that the 1999 statute did not require tenants in common to split a single tax credit. *Id.* The court found that the Department's 2003 regulation of section 522 was inconsistent with the language of both the 1999 and 2001 versions of the statute because neither version of the statute included "tenants in common" as being among those "taxpayers" required to split the tax credit. *Id.* at 192. The court concluded that the Department's 2003 regulation was therefore void as extending beyond the scope of the statute. *Id.* at 193. The court vacated the district court's judgment, however, because it was unable to determine on the record before it whether the 2006 amendment to the statute was unconstitutionally retroactive. *Id.* It therefore remanded the case to the district court with instructions to consider the retroactivity question. *Id.*

We granted certiorari to consider whether the court of appeals erred by interpreting section 522 as affording each couple in the tenancy in common a tax credit of up to $100,000 instead of requiring that a single credit of up to $100,000 be split among the tenancy's two couples.[4] Because the 1999 statute expressly limited the tax credit allowed to $100,000 "per donation," respondents were limited to an aggregate of $100,000 tax credit, which they exceeded in tax years 2000 and 2001. We therefore hold that the notices of deficiency were properly issued, and we now reverse the court of appeals.

**II.**

The 1999 version of section 522(2) provided that "there shall be allowed a credit ... to each taxpayer who donates ... all or part of the value of a perpetual conservation easement." § 39–22–522(2), C.R.S. (1999). The statute defined "taxpayer" as a "resident individual or a domestic or foreign corporation." § 39–22–522(1). The statute further provided that "[t]he amount of the credit

allowed ... shall not exceed one hundred thousand dollars per donation." § 39–22–522(4). The question here is whether the $100,000 cap applied to each taxpayer, or whether it applied to the donation as a whole. In other words, the question is whether each donor could claim up to a $100,000 tax credit, as the court of appeals held, or whether the total amount of tax credit that could be claimed was limited to $100,000, to be divided among the donors.

We adopt the latter interpretation. The statute expressly limited "[t]he amount of the credit allowed" to "one hundred thousand dollars *per donation.*" § 39–22–522(4) (emphasis added). Under this language, respondents were limited to a $100,000 tax credit "per donation"—that is, to an aggregate tax credit of $100,000 for the easement they donated. Therefore, the $154,700 tax credit that they claimed exceeded the $100,000 cap. To reach the contrary conclusion—and thereby affirm the court of appeals—we would necessarily have to read "per donation" as in fact meaning *"per member of a tenancy in common* per donation"—an interpretation at odds with section 522(4)'s actual language.

Our conclusion regarding the statutory language is enforced by the law governing tenancies in common. A tenancy in common is a "form of ownership in which each co-tenant owns a separate fractional share of *undivided property.*" *Taylor v. Canterbury*, 92 P.3d 961, 964 (Colo.2004) (emphasis added). Thus, the tenancy in common may only be donated in its entirety—that is, as one, single donation. As another provision of the 1999 statute made clear, *all* owners of the property must agree before a conservation easement can be created. § 38–30.5–104(1), C.R.S. (1999). Accordingly, to receive a tax credit under the 1999 statute, the easement must have been donated in its entirety as a single donation, not as discrete donations from each member of the tenancy. In sum, given the law governing tenancies in common, the statute's reference to "per dona-

---

4. Initially, we granted certiorari on the issue of whether the 2006 version of the statute could be retroactively applied to the respondents' situation, and denied certiorari on the issue of wheth-er the 1999 version of the statute permitted respondents' claimed tax credits. Subsequently, however, we granted certiorari on this issue as well.

tion" necessarily limits the available tax credit to an aggregate of $100,000.[5]

The court of appeals reached a different conclusion, holding that the statute entitled each member of the tenancy in common (here, each couple) to claim up to a $100,000 tax credit as a "taxpayer." *Kenna*, 179 P.3d at 192. The court focused exclusively on the fact that section 522(2) permitted "each taxpayer who donates ... all or part of the value of a perpetual conservation easement" to claim a tax credit. *Id.* The court interpreted this language to mean that each taxpayer who donates an easement may claim up to $100,000 credit. *Id.*

Contrary to the court of appeals' interpretation, however, the language of section 522(2) does not allow each "taxpayer" to claim a tax credit of up to $100,000. It simply states that each taxpayer may claim a tax credit; it does not set an amount that may be claimed. Indeed, the amount is set forth by section 522(4), which, as stated above, caps the credit at $100,000 "per donation." Significantly, section 522(2) expressly recognized section 522(4)'s aggregate $100,000 limitation by stating that the "allowed ... credit" would be "subject to the provisions of subsection[ ](4)"—that is, the $100,000 cap "per donation." The court of appeals failed to give "consistent, harmonious" effect to section 522's subparts when it failed to consider the interaction between those subparts. *See People v. Dist. Court*, 713 P.2d 918, 921 (Colo.1986) ("Where possible, the statute should be interpreted so as to give consistent, harmonious, and sensible effect to all its parts.").

The court of appeals also focused on the fact that the statute defined "taxpayer" as a "resident individual or a domestic or foreign corporation." *See Kenna*, 179 P.3d at 192; § 39–22–522(1). But again, there is no question that the respondents, as members of a tenancy in common, were "resident individual[s]" and taxpayers. Instead, the question

is how much of a tax credit the respondents, as taxpayers, could claim for their easement donation. Section 522(4) limits the aggregate of that tax credit to $100,000.

It is true, as the court of appeals pointed out, *Kenna*, 179 P.3d at 192, that until 2006 the statute did not subject tenancies in common *by name* to the $100,000 aggregate limitation. *See* § 39–22–522(4)(b), C.R.S. (2006).[6] And it is also true that, until 2003, there was no Department regulation subjecting tenancies in common *by name* as one of the entities subject to the $100,000 aggregate limit. 1 Colo.Code Regs. § 201–2, Regulation 39–22–522(2)(e)(I) (2003).

However, the court of appeals drew an incorrect conclusion from this legislative and regulatory activity that occurred subsequent to the passage of the 1999 statute. The court of appeals assumed that, given the subsequent activity, the 1999 statute could not have subjected tenancies in common to the aggregate $100,000 limit. But, as noted above, it did exactly that by imposing a $100,000 limit on a "per donation" basis.

In sum, under the 1999 statute, a donated conservation easement held by a tenancy in common, such as the one donated by respondents, was subject to the $100,000 aggregate limit. Therefore, contrary to the court of appeals' conclusion, the Department's December 2003 regulation limiting the total credit garnered by donations from tenancies in common to $100,000 was not an improper extension of the 1999 statute. Accordingly, because respondents claimed tax credits in excess of $100,000, the Department correctly issued the notices of deficiency.

Because we find that the 1999 statute limited the amount of tax credit for a donation of a conservation easement by a tenancy in common to an aggregate of $100,000, and that therefore the Department's 2003 regulation was a valid one, the issue identified by the court of appeals to be decided on remand to the district court—whether the 2006 stat-

---

**5.** Because this interpretation is required by the statutory language and the law governing tenancies in common, we need not consider whether the Department's interpretation of the 1999 statute is entitled to deference.

**6.** The statute was amended in 2001 to limit to $100,000 the total aggregate tax credit allowed for "a partnership, S corporation, or other similar pass-through entity that donates a conservation easement as an entity." § 39–22–522(5), C.R.S. (2001).

ute is retroactive in application, and, if so, whether such application would be unconstitutionally retrospective—is now moot. *See Kenna,* 179 P.3d at 193. However, we remand the case in order for the district court to "consider [respondents'] additional arguments for summary judgment, which [the district court] did not address in the original summary judgment order." *Id.* Accordingly, we reverse the court of appeals and remand for proceedings consistent with this opinion.

### III.

We hold that the 1999 version of the statute limited the tax credit given to a tenancy in common for a donated conservation easement to $100,000, and that therefore the Department properly issued the notices of deficiency to the respondents. Accordingly, we reverse the court of appeals and remand for proceedings consistent with this opinion.

Justice MARTINEZ concurs in the judgment only, and Chief Justice MULLARKEY joins in the concurrence.

Justice MARTINEZ, concurring in the judgment only:

While I agree with the majority's judgment that the decision of the court of appeals should be reversed, I do not agree with the reasoning employed to reach that result. The majority finds the 1999 language of the Conservation Easement Tax Credit Act ("Act"), § 39–22–522, C.R.S. (1999), limiting the tax credit to $100,000 "per donation" to be unambiguous. I, however, view the language as ambiguous, but would therefore defer to the Department of Revenue's ("Department") interpretation of the statute.

As enacted in 1999, the Act states "there shall be allowed a credit with respect to the income taxes imposed by this article to each taxpayer who donates during the taxable year all or part of the value of a perpetual conservation easement in gross ...." § 39–22–522(2). The Act defines "taxpayer" as "a resident individual or a domestic or foreign corporation subject to the provisions of part 3 of this article." *Id.* at (1). The Act limits the tax credit to "one hundred thousand dol-

lars *per donation.*" *Id.* at (4) (emphasis added).

The majority holds the "per donation" language unambiguously provides that the Act's $100,000 tax credit limits the amount of that credit to an aggregate total of $100,000 per conservation easement. Therefore, although in 1999 the Act was silent as to tenants in common, the majority holds the "per donation" language means all tenants in common who donated a single conservation easement must split the $100,000 credit.

In contrast to the majority, I view the "per donation" language as ambiguous because it is susceptible to multiple meanings. *The American Heritage Dictionary* defines "donation" as "the act of giving to a fund or cause" and alternatively as "a gift or grant." *The American Heritage Dictionary for the English Language* 354 (4th ed.2006). Similarly, *Webster's Dictionary* defines "donation" as "the act of giving or bestowing" and "that which is given as a present." *Webster's Revised Unabridged Dictionary* 281 (6th ed.1996). Therefore, "donation" can be interpreted to mean either the act of giving or the gift itself.

Accordingly, as used in the Act, "per donation" may be interpreted, as it was by the majority, to refer to the gift, a conservation easement. However, it may also be interpreted to refer to the act of giving, in this context, the act of each individual tenant in common gifting his separate, fractional share of the easement. Therefore, each individually filing tenant in common (or in the present case, each married couple) could claim a credit of up to $100,000.

The majority ignores the fact that the term "donation" has alternative meanings and discusses the word as if it only refers to the gift of the easement itself, not the act of giving a share of the easement. Because the majority only addresses one of two alternative definitions of "donation," I believe its conclusion that the term "per donation" is unambiguous is incorrect. Rather, I see the term as ambiguous and would therefore defer to the Department of Revenue's 2003 interpretation of the Act.

Regulation 39–22–522 ("the Regulation") stated "The total credit generated by the donation of a perpetual conservation easement in gross by tenants in common is limited to $100,000." 1 Colo.Code Regs. § 201–2, Regulation 39–22–522(2)(e)(I) (2003).

When a statute is ambiguous, courts accord "great deference to an agency's interpretation of the statute." *Smith v. Farmers Ins. Exch.*, 9 P.3d 335, 340 (Colo.2000). Courts may only disregard an agency's interpretation of a statute it is charged with enforcing when that interpretation is inconsistent with the clear language of the statute or the agency has exceeded the scope of the statute. *See Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); *Colo. Dep't of Revenue v. Woodmen of the World*, 919 P.2d 806, 817 (Colo.1996). Similarly, subsequent agency action that contradicts previous agency action carries less weight than contemporaneous, consistent agency interpretations. *Woodmen of the World*, 919 P.2d at 817.

Respondent-taxpayers assert the Department's interpretation of the statute is not entitled to deference for two reasons. First, they argue the Regulation was promulgated in response to the 2001 amendment of the Act and therefore does not apply to the 1999 version they donated the easement under. Second, they argue the Department has taken inconsistent positions with regard to its interpretation of the Act's "per donation language" and the Regulation is therefore not entitled to deference. However, Respondent-taxpayer's reasoning is flawed.

As discussed above, the Department's interpretation of the Act is consistent with one possible interpretation of the "per donation" language and does not exceed the scope of the statute. While the General Assembly amended the Act in 2001, it does not appear that the Department's interpretation related solely to the 2001 amendment. The 2001 amendment altered the Act to state partnerships, S corporations, and similar pass though entities that donate conservation easements as entities are limited to a total aggregate credit of $100,000. § 39–22–522(4)(b), C.R.S. (2001).

The Regulation stated "A credit is generated from the *donation* of a *single* perpetual conservation easement in gross." 1 Colo. Code Regs. § 201–2, Regulation 39–22–522(2)(a)(I) (2003) (emphasis added). The "single" easement language suggests the Department viewed the "per donation" language as referring to the conservation easement itself, not the act of giving the easement. The reference to the "donation" of a "single" conservation easement is consistent with one of the possible interpretations of the original 1999 language of the Act. Therefore, even if the Department issued the Regulation in Response to the 2001 amendment of the Act, the Regulation applies to pre-amendment "donations" because the definition of "donation" has remained constant.

Finally, the Regulation is not inconsistent with earlier positions of the Department as argued by Respondent-taxpayers and found by the court of appeals. Prior to issuance of the Regulation, the Department had not taken a position as to whether tenants in common must split the $100,000 credit limit. The simple fact that the Department issued Respondent-taxpayers a refund based on their claimed donations does not establish an official endorsement of the Respondent-taxpayer's interpretation of the tax laws.

After an initial acceptance of a tax return, the Department has four years to correct or audit a tax return. § 39–21–107(2), C.R.S. (2008). Therefore, the act of providing a refund based on a taxpayer's claimed tax credits does not indicate any official review or decision related to the correctness of tax return. The refund payment merely constitutes a response to the tax return which the Department has up to four years to correct. Accordingly, the fact the Department initially provided refunds to Respondent-taxpayers based on their claimed donations and later issued notices of deficiency does not establish that the Department interpreted the statute in an inconsistent manner. Rather, it merely establishes that the Department provided returns based on Respondent-taxpayer's claimed credits and, upon further review, determined the claimed credits to be incorrect.

Accordingly, because I view the Act's language limiting the available tax credit "per donation" to $100,000 as ambiguous, I would defer to the Department of Revenue's interpretation of the statute. The Department's interpretation is consistent with one meaning of the statute, is consistent with the statutory language of the 1999 Act under which Respondent-taxpayers donated the conservation easement, and does not represent inconsistent interpretations of the language. For these reasons, I believe the Department's interpretation of the Act is entitled to deference. I accordingly concur only with the judgment of the majority.

I am authorized to state that Chief Justice MULLARKEY joins in this concurrence.